STATE OF NORTH CAROLINA v. CHARLES RAY FINCH

No. 8

(Filed 14 July 1977)

**1. Criminal Law § 111.1— instruction to take law from judge — statement about appellate review — no error**

The trial court's remarks in a first degree murder prosecution that the jury should take the law as given to them by the court and "If the Court is wrong, then the Court of Appeals will let that be known. Somebody will straighten that out, but you take your instructions from the Court" merely informed the jurors that the law, as stated by the trial judge, would be subject to review by an appellate court, and did not suggest to the jury that its verdict was somehow less binding because of later opportunities for review.

**2. Constitutional Law § 63; Jury § 7— exclusion of jurors for death penalty views — death penalty invalidated**

Defendant's contention, made in reliance upon *Witherspoon v. Illinois*, 391 U.S. 510, that his constitutional rights were violated by the exclusion of jurors who expressed scruples against the death penalty is groundless, since the death penalty provision of G.S. 14-17, the statute under which defendant was sentenced, was invalidated by *Woodson v. North Carolina*, 428 U.S. 280, and the *Witherspoon* decision affected only the death sentence and not the conviction.

**3. Jury § 5— prospective jurors — expression of opinion during selection — no prejudice**

Defendant was not prejudiced by the denial of his motion for a mistrial made during jury selection and grounded on statements by two prospective jurors that they thought defendant was guilty, since the trial court promptly excused the prospective jurors and immediately instructed the other jurors not to consider the remarks.

**4. Criminal Law § 66— illegal and unconstitutional arrest — admissibility of identification testimony**

There is nothing in the law of North Carolina which requires that identification evidence, obtained subsequent to an illegal arrest, be excluded, nor does an unconstitutional arrest require the exclusion of identification testimony that is otherwise competent.

**5. Criminal Law § 66.5— lineup during investigation of crime — no right to counsel**

Defendant's contention that identification evidence should have been excluded because he was not represented by counsel at a pretrial lineup is without merit, since the lineup was conducted at a time when the proceeding was investigatory and had not become a criminal prosecution, and a person's right to counsel attaches only at or after the initiation of adversary judicial criminal proceedings.

6. **Criminal Law § 89.10— impeachment—witness's prior conviction— scope of cross-examination**

Where, for purposes of impeachment, the witness has admitted a prior conviction, the time and place of the conviction and the punishment imposed may be inquired into upon cross-examination, and this is permissible regardless of whether the witness is the accused.

7. **Criminal Law § 89.10— witness's prior criminal conduct—inquiry as to punishment improper**

Defendant had no right to inquire concerning punishment imposed upon a witness in a prior criminal proceeding where defendant failed to show that the witness had been convicted of an offense.

8. **Criminal Law § 89.10— witness's prior criminal conduct—inquiry as to punishment proper**

The trial court erred in refusing to allow defendant to cross-examine a witness concerning punishment imposed upon the witness's earlier conviction of traffic offenses, but exclusion of this testimony was harmless error.

9. **Criminal Law § 89.10— witness's prior conduct—cross-examiner bound by witness's testimony**

Where a State's witness testified on cross-examination that he was no longer a drinking man, defendant was bound by such testimony and was not entitled to introduce testimony of two other witnesses to contradict that of the first witness.

10. **Criminal Law § 87.1— leading question—discretionary matter**

The trial court did not abuse its discretion in refusing to allow defense counsel to ask a witness a leading question on direct examination.

11. **Criminal Law § 63— nonexpert opinion of mental capacity—insufficient basis for admissibility**

The opinion of a lay witness as to the mental capacity of another witness was based on observations too remote in time and was properly excluded by the trial judge where the evidence showed that the witness's opinion was based on observations made from 1969 to 1972, and there was no evidence that the witness observed the second witness at any more recent time.

12. **Constitutional Law § 80; Homicide § 31.1— first degree murder—life sentence substituted for death penalty**

A life sentence is substituted for the death penalty imposed in this first degree murder prosecution.

DEFENDANT appeals from judgment of *Crissman, J.,* 28 June 1976 Session, WILSON Superior Court.

Defendant was tried upon a bill of indictment, proper in form, charging him with the first degree murder of Richard Linwood Holloman on 13 February 1976 in Wilson County.

The State offered evidence tending to show that on 13 February 1976 at approxomately 9 p.m. the deceased, Richard Linwood Holloman, and his employee, Lester Floyd Jones, were closing Mr. Holloman's grocery store and service station located on N. C. Highway 117 south of Wilson, North Carolina. The lights in the store had been turned off and the front door locked with a padlock. Holloman and Jones were standing in front of the store talking when three black males walked up. One of them asked if he could get an Alka-Seltzer and Mr. Holloman said, "I reckon so." At that time Mr. Holloman had his .32 caliber pistol in his hand in full view. He unlocked the padlock on the front door with his left hand, holding the pistol in his right hand. Holloman and Jones then entered the store followed by two black males. There were no lights on in the store except the lights around a clock. However, there were two windows in front of the store, one on each side of the door, and there was a row of lights under the roof of the building all the way around — six lights on the front with hundred watt bulbs on the two corners.

Mr. Holloman got an Alka-Seltzer off the shelf with his left hand and asked the black male if he wanted a cup. The black man replied, "Yes, and your money too." Mr. Holloman replied, "Money, hell," whereupon the black man pulled a sawed-off shotgun and both he and Mr. Holloman fired their weapons. Mr. Jones jumped behind a counter on his stomach and heard additional shots being fired. Immediately following the shooting the three black males left. Mr. Jones called the rescue squad and Mr. Holloman was taken to Wilson Memorial Hospital where he later died from gunshot wounds under his collarbone on the right side and under the right shoulder blade.

When the officers arrived on the scene Lester Floyd Jones furnished a description of the three black males. He told the officers the man with the sawed-off shotgun was from 5 feet 9 inches to 6 feet tall, weighed 150 to 165 pounds, thirty to thirty-five years of age, and was wearing a dark coat, light shirt and dark pants, with part of a woman's light colored stocking on his head.

Later that night defendant Charles Ray Finch, in company with one Charles Lewis, was driving his blue Cadillac on East Nash Street in the City of Wilson and was stopped by several police officers who arrested him without a warrant. He and

Charles Lewis were taken to the Wilson County Courthouse where defendant's automobile was searched. A shotgun shell was found in the ashtray in the left rear door of the car. That same night at approximately 1 a.m. defendant was placed in a lineup with six other people and Lester Floyd Jones identified defendant as the man who shot Mr. Holloman. The witness Jones so testified at the trial and made an in-court identification of defendant as the man who shot Mr. Holloman.

Defendant did not testify but offered several other witnesses who testified that at 9 p.m. on 13 February 1976 when Mr. Holloman was shot, defendant was in a poker game at Tom Smith's Shoeshine Parlor on East Nash Street in downtown Wilson. These witnesses testified in detail as to defendant's activities on the night in question and were positive in their testimony that defendant was at the shoeshine parlor or in the downtown Wilson area at the time Mr. Holloman was shot at his place of business on N. C. Highway 117 several miles away.

Defendant was convicted of felony murder and sentenced to death. He appealed to the Supreme Court assigning numerous errors which will be discussed in the opinion.

*Rufus L. Edmisten, Attorney General, by David S. Crump, Assistant Attorney General, for the State of North Carolina.*

*Vernon F. Daughtridge, attorney for defendant appellant.*

HUSKINS, Justice.

[1] Prior to the call of the case the court spoke briefly to the jurors present in the courtroom. These remarks by Judge Crissman included the following statement:

> "Now as I said, you are supposed to listen well and observe and remember the evidence as well as you can, and evaluate it, but then you are supposed to take your instructions from the Court, and that is the law that is applicable in the case give to you then by the Court, and you are supposed to take what the Court says the law is and not what you think the law ought to be, or not what you would like for the law to be, but you take what the court says about the law, and what it is in the case. *If the Court is wrong, then the Court of Appeals will let that be known. Somebody will straighten that out, but you take your instructions from the Court.*" (Emphasis added.)

Defendant contends the court thereby impermissibly informed the jury that the case would be reviewed by an appelllate court in the event a guilty verdict was returned. This, defendant argues, "lightened the burden" of the jury in violation of the rule discussed in *State v. White*, 286 N.C. 395, 211 S.E.2d 445 (1975), and *State v. Hines*, 286 N.C. 377, 211 S.E. 2d 201 (1975). We think defendant misconstrues the holding in those decisions.

In *Hines*, the district attorney made the following statement to a juror in response to her expressed hesitation about returning a guilty verdict knowing it would result in a death sentence:

"Well, everybody feels that way but this is the punishment that is provided at this point. And to ease your feelings, I might say to you that no one has been put to death in North Carolina since 1961."

Thus the district attorney suggested to the jury that even though they might return a verdict requiring the defendant to be put to death, such punishment in all probability would never be imposed. In light of this suggestion we held:

"It is the province of a juror to return a verdict which speaks the truth. This duty is his sole responsibility. We cannot allow this solemn obligation to be diluted by statements *aliunde* the record and foreign to his single duty. In these volatile and bitterly contested cases, in which three human lives hung in the balance, *we think the solicitor's statement was intended to, and in all probability did, lighten the solemn burden of the jurors in returning their verdict.*" (Emphasis added.)

In *White*, the private prosecutor said:

"You will answer the question whether this defendant is guilty of first degree murder. If found guilty, he gets an automatic appeal to the Supreme Court of North Carolina — it is necessary. If any error is made in this court, that Court will say."

By this statement the jury was informed that there was a further review of the case, including the *verdict*, and this Court held that argument "which suggests to the jury that they can depend upon either judicial or executive review to correct any

error in their verdict, and to share responsibility for it, is an abuse of privilege and prejudicial to the defendant." *State v. White, supra.*

The contested remark of Judge Crissman, while perhaps unnecessary, in no way "shares the burden" of the jury by intimating that its verdict will be reviewed or that the mandated punishment will be withheld. Rather, it merely informs the jurors that the law, as stated by the trial judge, will be subject to review by an appellate court. There is therefore no suggestion to the jury that *its* verdict is somehow less binding because of later opportunities for review. We fail to see how defendant has been prejudiced by the judge's remarks. Defendant's first assignment is overruled.

[2]   Relying on *Witherspoon v. Illinois*, 391 U.S. 510, 20 L.Ed. 2d 776, 88 S.Ct. 1770 (1968), defendant next contends that his constitutional rights were violated by the exclusion of jurors who expressed scruples against the death penalty. We note, however, that the United States Supreme Court in *Woodson v. North Carolina*, 428 U.S. 280, 49 L.Ed. 2d 944, 96 S.Ct. 2978 (1976), invalidated the death penalty provision of G.S. 14-17, the statute under which defendant was sentenced. As the *Witherspoon* decision affected only the death sentence and not the conviction, defendant's contention is groundless. *State v. Montgomery*, 291 N.C. 235, 229 S.E. 2d 904 (1976); *State v. Covington*, 290 N.C. 313, 226 S.E. 2d 629 (1976). This assignment is overruled.

[3]   Defendant next assigns as error the denial of his motion for a mistrial made during jury selection. The motion is grounded on statements made by two prospective jurors, Kenneth Wood and Aaron Lewis. Wood, in response to a question as to whether he had formed an opinion as to defendant's guilt or innocence, responded that he thought defendant would be guilty. Lewis, when asked if he could reach a verdict based on the evidence, stated that from what he read he felt the defendant was guilty. Defendant contends that since these remarks were heard by the other jurors, he was prejudiced and the trial judge should have declared a mistrial. We think not.

The granting of a mistrial rests largely in the discretion of the trial judge. *State v. Jarrette*, 284 N.C. 625, 202 S.E. 2d 721 (1974). Here, Judge Crissman promptly excused jurors Wood and Lewis and immediately instructed the other jurors

not to consider the remarks. This sufficed to cure any prejudice. *See State v. Moore*, 276 N.C. 142, 171 S.E. 2d 453 (1970).

Defendant next assigns as error the admission of evidence identifying the defendant as the man wielding the shotgun.

Under this assignment defendant contends first that his constitutional rights were violated in that the lineup was conducted while defendant was under an unlawful arrest. Apparently defendant argues that his in-court identification by Lester Floyd Jones and evidence of the lineup identification stemmed directly from the alleged unlawful arrest and, as such, were tainted as "fruits of the poison tree." For the reasons which follow we find no merit in this assignment.

[4] Defendant contends that his arrest was not only "illegal," *i.e.*, in violation of G.S. 15A-401, but also "unconstitutional." Assuming, for the moment, that the arrest was both "illegal" and "unconstitutional," there is no merit in defendant's contention that this compels the exclusion of identification evidence obtained thereby.

Clearly a finding that an arrest is "illegal" is not sufficient ground to exclude the controverted testimony. As we said in *State v. Eubanks*, 283 N.C. 556, 196 S.E. 2d 706 (1973):

"The issue then is this: When an arrest is constitutionally valid but illegal under the law of North Carolina, must the facts discovered or the evidence obtained as a result of the arrest be excluded as evidence in the trial of the action? The answer is no. An unlawful arrest may not be equated, as defendant seeks to do, to an unlawful search and seizure. All evidence obtained by searches and seizures in violation of the Federal Constitution is inadmissible in a state court. *Mapp v. Ohio*, [367 U.S. 643, 6 L.Ed. 2d 1081, 81 S.Ct. 1684 (1961)]. Such evidence is also inadmissible by statute in North Carolina, G.S. 15-27(a). But there is no such rule and no such statute in this State with respect to facts discovered or evidence obtained following an illegal arrest. Neither reason nor logic supports the suggestion.

We hold that nothing in our law requires the exclusion of evidence obtained following an arrest which is constitutionally valid but illegal for failure to first obtain an arrest warrant. Defendant may, if so advised, redress his

grievance for the warrantless arrest by a civil action for damages. [Citations omitted.] But the competency of the evidence obtained following his illegal arrest remains unimpaired."

We find nothing in the law of North Carolina which requires that identification evidence, obtained subsequent to an illegal arrest, be excluded.

Similarly, we find no merit in defendant's contention that an "unconstitutional" arrest *requires* the exclusion of identification testimony that is *otherwise competent.* In a recent decision dealing with a similar situation, the Fourth Circuit stated:

"There is no constitutional right not to be viewed. *United States v. Quarles,* 4 Cir., 387 F. 2d 551 (1967). It is only when the arrest itself produces such pressure as to compel admissions or the production of contraband or the seizing of evidence that would not otherwise have been detected that the poisonous tree can be said to produce fruit. *Wong Sun v. United States,* 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed. 2d 441 (1963). We hold that an unlawful arrest does not per se make inadmissible positive identification testimony that is otherwise competent. *See Vance v. State of North Carolina,* 4 Cir., 432 F. 2d 984, 990 (1970). Whether such testimony is admissible does not depend upon the validity of the arrest but upon whether the confrontation was 'so unnecessarily suggestive and conducive to irreparable mistaken identification that [appellants were] denied due process of law,' *Stovall v. Denno,* 388 U.S. 293, 302, 87 S.Ct. 1967, 1972, 18 L.Ed. 2d 1199 (1967)."

*United States v. Young,* 512 F. 2d 321 (4th Cir. 1975), *cert. denied,* 424 U.S. 956 (1976); *accord, People v. Love,* 24 Ill. App. 3d 477, 321 N.E. 2d 419 (1974); *Metallo v. State,* 10 Md. App. 76, 267 A. 2d 804 (1970); *State v. Timley,* 541 S.W. 2d 6 (Mo. Ct. App. 1976); *Commonwealth v. Garvin,* 448 Pa. 258, 293 A. 2d 33 (1972).

We see no chance that defendant's arrest created a likelihood that the pretrial confrontation was so "conducive to irreparable mistaken identification as to offend fundamental standards of decency, fairness and justice." *State v. Henderson,* 285 N.C. 1, 203 S.E. 2d 10 (1974), and cases cited.

Moreover, we have reviewed the evidence, as disclosed at trial, upon which the officers acted when they arrested the defendant and find this evidence sufficient to establish probable cause to arrest defendant without a warrant for the felony of murder. *See State v. Dickens*, 278 N.C. 537, 180 S.E. 2d 844 (1971); *State v. Jacobs*, 277 N.C. 151, 176 S.E. 2d 744 (1970). Thus we hold the arrest was both legal, G.S. 15A-401(b)(2), and constitutional, *see Beck v. Ohio*, 379 U.S. 89, 13 L.Ed. 2d 142, 85 S.Ct. 223 (1964). Defendant's contention is without merit.

[5] By his second contention under this assignment of error, defendant argues that identification evidence should have been excluded because he was not represented by counsel at the lineup and the trial judge failed to make adequate findings that defendant had waived counsel.

The voir dire testimony of Deputy Sheriff Owens indicates that defendant was picked up because he was a *suspect* in an attempted armed robbery and killing. The record does not indicate that any adversary judicial proceedings were initiated against defendant prior to the lineup. It is clear from the testimony of Deputy Owens that at the time of the lineup confrontation the proceeding was investigatory and had not become a "criminal prosecution." A person's right to counsel attaches only "at or after the initiation of adversary judicial criminal proceedings—whether by way of formal charge, preliminary hearing, indictment, information, or arraignment." *Kirby v. Illinois*, 406 U.S. 682, 32 L.Ed. 2d 411, 92 S.Ct. 1877 (1972); *United States v. Duvall*, 537 F. 2d 15 (2d Cir. 1976); *United States ex rel. Burbank v. Warden*, Ill. St. Pen., 535 F. 2d 361 (7th Cir. 1976); *State v. Sweezy*, 291 N.C. 366, 230 S.E. 2d 524 (1976); *State v. Henderson, supra.* Thus it was not required that defendant be furnished counsel at the lineup and defendant's second contention is without merit.

Defendant assigns as error the exclusion of answers to certain questions asked by defense counsel.

During cross-examination of State's witness Nobel Harris, the following transpired:

"On October 8, 1956, I did not plead guilty to assault with a deadly weapon.

Q. Didn't you pay $25.00 and costs?

MR. BROWN: Objection.

COURT: Sustained."

During cross-examination of State's witness Lester Floyd Jones, the following transpired:

"I have been convicted of displaying a fictitious license in 1965, February 1965, and other than that traffic violations only. Displaying a fictitious driver's license. That was not in May, 1965. It was in February, 1965. I pled guilty at the same time to driving without a driver's license.

Q. Were you given a twelve months active sentence?

MR. BROWN: Objection.

COURT: Sustained."

It is the rule in North Carolina that for purposes of impeachment, a witness, including the accused, may be cross-examined with respect to prior convictions. *State v. Williams*, 279 N.C. 663, 185 S.E. 2d 174 (1971); 1 Stansbury's North Carolina Evidence (Brandis rev. 1973) § 112 and cases cited.

Defendant seeks to extend this rule to allow cross-examination of the witness as to the punishment imposed upon him as a result of that conviction. Strong policy reasons support the principle that ordinarily one may not go into the details of the crime by which the witness is being impeached. Such details unduly distract the jury from the issues properly before it, harass the witness and inject confusion into the trial of the case. Nevertheless, where a conviction has been established, a limited inquiry into the time and place of conviction and the punishment imposed is proper. *See Beaudine v. United States*, 368 F. 2d 417 (5th Cir. 1966). Such examination, so limited in scope, permits the jury to more accurately gauge the credibility of the witness while minimizing the distraction inherent in any collateral inquiry.

[6] We therefore hold that where, for purposes of impeachment, the witness has admitted a prior conviction, the time and place of the conviction and the punishment imposed may be inquired into upon cross-examination. *Accord, Gafford v. State*, 440 F. 2d 405 (Alaska 1968), *cert. denied*, 393 U.S. 1120 (1969), *overruled on other grounds*, 487 P. 2d 831 (Alaska 1971); *State v. Washington*, 383 S.W. 2d 518 (Mo. 1964); *State v. Sinclair*,

57 N.J. 56, 269 A. 2d 161 (1970); *State v. Sayward*, 66 Wash. 2d 698, 404 P. 2d 783 (1965); *see State v. Sheffield*, 251 N.C. 309, 111 S.E. 2d 195 (1959); *State v. King*, 224 N.C. 329, 30 S.E. 2d 230 (1944); *State v. Holder*, 153 N.C. 606, 69 S.E. 66 (1910). *See generally*, Annot., 67 A.L.R. 3d 775 (1975). This is permissible regardless of whether the witness is the accused. Any intimation to the contrary expressed in the *per curiam* decision in *State v. McNair*, 272 N.C. 130, 157 S.E. 2d 660 (1967), is expressly overruled.

[7] We now apply this law to the facts of the present case. With respect to the cross-examination of State's witness Nobel Harris, it is apparent that defense counsel did not first establish that Mr. Harris had been convicted of the offense of assault with a deadly weapon. Rather, the witness denied the conviction and that denial is conclusive. 1 Stansbury's North Carolina Evidence (Brandis rev. 1973) § 112. A showing that the witness has been convicted of an offense is a prerequisite to the *right* to cross-examine him relative to the punishment imposed. Defendant, not having satisfied this requirement, had no right to inquire concerning punishment.

[8] With respect to the testimony of State's witness Lester Floyd Jones, defendant's question relative to punishment imposed for traffic offenses was in all respects proper and the objection of the State should have been overruled. However, it is clear beyond a reasonable doubt that the exclusion of this testimony was harmless error. In our opinion there is no reasonable possibility that the excluded testimony might have contributed to defendant's conviction or that a different result likely would have ensued had the testimony been admitted. *Schneble v. Florida*, 405 U.S. 427, 31 L.Ed. 2d 340, 92 S.Ct. 1056 (1972); *Fahy v. Connecticut*, 375 U.S. 85, 11 L.Ed. 2d 171, 84 S.Ct. 229 (1963); *State v. Taylor*, 280 N.C. 273, 185 S.E. 2d 677 (1972); *State v. Barbour*, 278 N.C. 449, 180 S.E. 2d 115 (1971); *State v. Williams*, 275 N.C. 77, 165 S.E. 2d 481 (1969). This assignment is overruled.

[9] The defendant assigns as error the trial judge's exclusion of certain testimony tending to impeach the credibility of State's witness Lester Floyd Jones. Jones testified on cross-examination that while he had been a drinking man, this activity was in the past and he had not had a drink in the last four years. Defendant attempted to introduce the testimony of

Bobby Taylor and Archie Artis to contradict Jones' assertion that he no longer was a "drinking man." This testimony was excluded and defendant now assigns that exclusion as error.

Defendant's contention is wholly without merit. It is elementary that with respect to collateral matters such as these, "the cross-examining party is bound by the witness's answer and may not contradict it by extrinsic testimony. This rule applies to . . . specific instances of misconduct relevant only to the question of the witness's moral character." 1 Stansbury's North Carolina Evidence (Brandis rev. 1973) § 48 and cases cited. This assignment is overruled.

[10] Defendant next contends that the court impermissibly restricted the direct examination of his witness Bobby Taylor. During that examination the following occurred:

"[Lester Jones] said 'I have something to tell you.' We went on out and he said, 'You know I liked to got killed the other night.' I said, 'You did?' He said, 'Yes, I did.' I asked him where and he said, 'Do you know Ray Finch,' I said 'no' and he said, 'You know the colored boy named Ray Finch' and I said, 'Yeah.' He said, 'I will tell you something, but don't you tell nobody. I think he is the one who killed that man out there.' I said, 'What man?' He said, 'The man out there where I was working at. He said they shot a man.' Then he went on telling me that and he said three men came in the store and went back in the store and they asked for the man's money and Ray Finch shot the man in the back. He said he thought it was him. He didn't say anything else in regard to his identification. He said, 'Do you know how he looks?' I said 'Yeah, I know how he looks. He is about my height and about my size.' He was asking me how he looked.

Q. I ask you whether or not he stated that he was not sure it was Finch?

A. Well . . .

MR. BROWN: Objection.

COURT: Sustained. He is your witness. Don't answer that."

Defense counsel attempted several more times, unsuccessfully, to elicit the desired answer from Taylor and then was

permitted to place the following question and answer into the record out of the hearing of the jury.

> Q. (whispered) State whether or not Floyd Jones told you he was not sure it was Charles Ray Finch who shot Mr. Holloman.
>
> MR. BROWN: Objection.
>
> A. (whispered) He said he was not sure."

Defendant then moved to be allowed to put that question and answer before the jury, which motion was denied. Defendant contends the trial court erred in that, while the question was leading, the witness had exhausted his memory without stating the matter required and therefore, under the rule in *State v. Greene*, 285 N.C. 482, 206 S.E. 2d 229 (1974), the court erred in refusing to permit defense counsel to put the question and answer before the jury.

In *Greene*, this Court, speaking through Justice Branch, stated:

> "[I]t is firmly entrenched in the law of this State that it is within the sound discretion of the trial judge to determine whether counsel shall be permitted to ask leading questions, and in the absence of abuse the exercise of such discretion will not be disturbed on appeal. [Citations omitted.]
>
> The trial judge in ruling on leading questions is aided by certain guidelines which have evolved over the years to the effect that counsel should be allowed to lead his witness on direct examination when . . . (5) the examiner seeks to aid the witness's recollection or refresh his memory when the witness has exhausted his memory without stating the particular matters required. . . ."

Thus, even should defendant fall within one of the enumerated guidelines, the ruling is within the discretion of the trial court. We are unable to say from our examination of the record that the trial judge, by his ruling, abused his discretion and this assignment must be overruled.

[11] Defendant further objects to the exclusion of testimony by Taylor that State's witness Jones' "mind is not right." We see no merit to defendant's contention.

Ordinarily, lay opinion may be received as to the mental capacity of a witness. *State v. Armstrong*, 232 N.C. 727, 62 S.E. 2d 50 (1950); *State v. Witherspoon*, 210 N.C. 647, 188 S.E. 111 (1936); *State v. Ketchey*, 70 N.C. 621 (1874); 1 Stansbury's North Carolina Evidence (Brandis rev. 1973) § 127. However, it is essential that such opinion be based on observation of the witness during a period not too remote from the time during which the witness's mental capacity is in question, so that a similar condition may be inferred to have existed at that time. *In re Will of Hall*, 252 N.C. 70, 113 S.E. 2d 1 (1960); *In re Will of Hargrove*, 206 N.C. 307, 173 S.E. 577 (1934); *In re Will of Stocks*, 175 N.C. 224, 95 S.E. 360 (1918); *In re Smith's Will*, 163 N.C. 464, 79 S.E. 977 (1913); Annot., 40 A.L.R. 2d 15 (1955).

The testimony of Bobby Taylor reveals that he worked with Lester Jones from 1969 to 1972 and that his opinion of the mental capacity of Jones *is based on observations during that period*. There is no evidence that he observed Jones at any more recent time and, in fact, the record reveals that when Jones first saw Taylor at Farrow's Grocery a week after the shooting, he said, "Man, where have you been so long?"

We hold on this record that the opinion of Taylor as to the mental capacity of the witness Jones was based on observations too remote in time and was properly excluded by the trial judge.

Defendant assigns as error other rulings by the trial judge in regard to evidence presented by both the State and defendant. We have examined these closely and find them wholly devoid of merit. Discussion is not necessary.

Defendant next assigns as error the denial of his motion for judgment as of nonsuit. He contends the identification testimony of Lester Jones should have been excluded and that, if it had been, nonsuit would have been required. It is axiomatic that all evidence actually admitted, whether competent or incompetent, which is favorable to the State must be considered when ruling on nonsuit. *State v. Smith*, 291 N.C. 505, 231 S.E. 2d 663 (1977); *State v. Walker*, 266 N.C. 269, 145 S.E. 2d 833 (1966). Further, since we have already held that the identification was competent and properly admitted, this assignment is overruled.

Under his next assignment defendant brings forward several objections to the jury argument of the district attorney.

We have examined the argument as a whole and find no impropriety in the district attorney's remarks which unfairly prejudiced the defendant so as to deprive him of a fair trial. This assignment is overruled.

Defendant next contends the trial court erred in that portion of the jury charge dealing with the responsibility of the defendant for the acts of his accomplices. The particular language pointed out by defendant, when viewed alone, does appear confusing. However, we have said many times that the "charge of the court will be construed contextually, and segregated portions will not be held prejudicial error when the charge as a whole is free from objection." See 4 N.C. Index 3d, Criminal Law § 168 and the plethora of cases cited therein. When so considered, we hold that the charge substantially conveyed applicable law to the jury. Errors in the charge, if any, were favorable to defendant and do not entitle him to a new trial. *State v. Goldberg*, 261 N.C. 181, 134 S.E. 2d 334 (1964).

[12] In *Woodson v. North Carolina*, 428 U.S. 280, 49 L.Ed. 2d 944, 96 S.Ct. 2978 (1976), the Supreme Court of the United States invalidated the death penalty provisions of G.S. 14-17 (Cum. Supp. 1975), the statute under which defendant was indicted, convicted and sentenced to death. The death sentence in this case is therefore vacated and, by authority of the provisions of the 1973 Session Laws, Chapter 1201, section 7 (1974 Session), a sentence of life imprisonment is substituted in lieu of the death penalty.

Our examination of the entire record discloses no error affecting the validity of the verdict returned by the jury. The trial and verdict must therefore be upheld. To the end that a sentence of life imprisonment may be substituted in lieu of the death sentence heretofore imposed, the case is remanded to the Superior Court of Wilson County with directions (1) that the presiding judge, without requiring the presence of defendant, enter a judgment imposing life imprisonment for the first degree murder of which defendant has been convicted; and (2) that in accordance with said judgment the clerk of superior court issue a commitment in substitution for the commitment heretofore issued. It is further ordered that the clerk furnish the defendant and his counsel a copy of the judgment and commitment as revised in accordance with this opinion.

No error in the verdict.

Death sentence vacated.