STATE OF NORTH CAROLINA v. DAVID E. MILLER, JR., AND ROLAND RILEY WILLIAMS

No. 87

(Filed 7 April 1981)

**1. Criminal Law § 162.4— motion to strike — part of answer admissible — similar testimony admitted without objection**

   Defendant's motion to strike a witness's entire answer to a question was properly denied where part of the witness's answer was responsive to the question and part was not, and where the part which was not responsive was the subject of earlier testimony by the witness without objection.

**2. Criminal Law § 71— instantaneous conclusion of the mind — shorthand statement of the fact**

   A witness's testimony that defendant would not return his gun to him in front of other people in his apartment was admissible as an instantaneous conclusion of the mind or a shorthand statement of fact.

**3. Criminal Law § 113.1— credibility of witness — summarizing evidence**

   Absent a special request, the court is not required to summarize the evidence which merely reflects on the credibility of a given witness.

**4. Criminal Law § 50.1— inadmissible opinion testimony — harmless error**

   An officer's testimony that defendant's written statement varied from his oral statement only in that it was in more detail constituted inadmissible opinion testimony since the jury was as competent as the officer to make a comparison and determine whatever consistencies or inconsistencies there were in the two statements. However, the admission of the officer's testimony was harmless error where there was in fact no material difference between the oral and written statements, and both statements were before the jury.

**5. Criminal Law §§ 75, 95.1— admission of defendant's statements for corroboration — no necessity for repeating limiting instruction**

The trial court's instruction, given before an officer related an oral statement made by defendant, that the officer's testimony "as to what [defendant] told him" was admitted solely for the purpose of corroboration was sufficient to insure that both oral and written versions of defendant's statement were considered only for corroborative purposes, and the court did not err in failing to repeat the instruction prior to the officer's reading of the written statement to the jury.

**6. Criminal Law § 86.2— cross-examination of defendant — time spent in prison**

The trial court properly permitted the prosecutor to cross-examine defendant about how much time he had spent in prison where defendant had admitted on direct examination the various crimes of which he had been convicted and the punishment imposed in regard thereto.

**7. Criminal Law §§ 53.1, 57; Homicide § 15.4— gauge of gun used in murder — testimony by pathologist**

In a prosecution for first degree murder, an expert forensic pathologist who examined the victim's body was properly permitted to give an expert opinion as to the size, or gauge, of the gun used to murder the victim.

Justice MEYER did not participate in the consideration and decision of this case.

Before *Judge Barefoot*, presiding at the 14 and 21 January 1980 Criminal Sessions of BEAUFORT Superior Court, and a jury, defendants, whose trials were joined, were convicted of murder in the first degree of one James Perry Ebron. Both defendants were sentenced to life imprisonment because, as to defendant Williams, the jury recommended life and as to defendant Miller, the jury could not agree on a sentence. Both defendants appeal as of right to this Court pursuant to G.S. 7A-27. This case was docketed and argued as No. 45, Fall Term 1980.

*Rufus L. Edmisten, Attorney General, by William F. Briley, Assistant Attorney General, for the state.*

*John A. Wilkinson, Attorney for defendant appellant Miller.*

*Franklin B. Johnston, Attorney for defendant appellant Williams.*

EXUM, Justice.

Defendants assign as error numerous evidentiary rulings and the failure of the trial judge adequately to summarize the evidence in his charge to the jury. After careful examination of each of

defendants' contentions we conclude that both received a fair trial free from prejudicial error.

The state's evidence tends to show the following: At approximately 2:00 a.m. on 27 September 1979 a customer of the Stop-N-Go store in Washington, North Carolina, discovered the body of the deceased, James Perry Ebron, the store operator, lying face down on the floor in the store near the cash register. Later that morning Ebron died from a wound inflicted to his head by a small gauge, 28 or .410, shotgun. Some $141.69 was missing from the cash register. One of the investigating policemen, Danny Respass, had been in the store at approximately 1:50 a.m. on 27 September as a customer. Ebron had waited on him at that time. One Jimmy Lee Cole drove up to the store at approximately 2:00 a.m. on 27 September to purchase gas. After making his purchase, he got into his car to leave. Defendants Williams and Miller, who were acquaintances of Cole, jumped into his car and told him "to drive because [they] had just robbed the store." Cole took the defendants to his home and went upstairs to wake his wife. When he returned downstairs, Williams had gone but Miller was still there. Cole and his wife took Miller to downtown Washington and then returned home.

When Cole awoke on the morning of 27 September, Williams was at his home. Cole ordered him out of his house. Later that evening Cole contacted Officer Respass and told him what had transpired between him, Williams and Miller. Later Williams came by Cole's home and asked Cole to be "an alibi for him." Cole refused, went upstairs and asked his wife to call Respass. Cole kept Williams in his home until Respass arrived with another officer and placed Williams under arrest.

Both defendants testified. They denied any participation in the event at the Stop-N-Go store on the evening in question.

Assignments of error raised by both defendants are discussed in Part I of this opinion; those raised only by defendant Miller are discussed in Part II; and those raised only by defendant Williams are discussed in Part III.

I.

In an effort to show that Ebron was alive at 1:00 a.m. on 27 September the state offered the testimony of William Alonza Jones, a Stop-N-Go employee who worked the shift immediately before

State v. Miller

Ebron's shift. Without objection this witness testified that because the store was required to stop selling beer at 1:00 a.m. the employees did not restock the coolers until after that time. When restocking the coolers all empty bottles, beer cartons, and plastic beer wrappers are thrown on the floor in front of the coolers. William Alonza Jones testified that when he returned to the store at 2:30 a.m. he observed the beer cooler area and that "empty cartons were lying on the floor." The following exchange then occurred:

> "Q. And was there beer in the display there that was not there when you left there at eleven o'clock?
>
> MR. WILKINSON: OBJECTION for the record, Your Honor.
>
> COURT: OVERRULED.
>
> EXCEPTION NO. 2
>
> A. Well, the beer had been pulled to the front, that's the way we stock the cooler, you pull all - - - you take all the loose beers out and stack them and pull all the rest of the beer to the front.
>
> Q. All right, what happens to the loose . . .
>
> MR. WILKINSON: May it please the Court, I move on the basis of that statement, I move now to strike the answers to which I previously . . .
>
> COURT: All you have to do is make your motion to strike, you don't have to make any comments.
>
> MR. WILKINSON: All right.
>
> COURT: Motion denied."

On cross-examination William Alonza Jones testified that he had told Ebron not to stock the cooler until after 1:00 a.m. and that when he returned at 2:30 a.m. he observed a number of empty plastic beer containers in the aisle near the cooler.

[1] We see no error in the complained of testimony to which Mr. Wilkinson objected. The question to which he objected was proper inasmuch as it called for the witness to testify to that which he observed both when he left the store at 11:00 p.m. and when he

returned at 2:30 a.m. Part of his answer was responsive to the question and part was not. Defendant's motion to strike the entire answer was, therefore, appropriately denied. *State v. Pope*, 287 N.C. 505, 215 S.E. 2d 139 (1975); *State v. Jarrette*, 284 N.C. 625, 202 S.E. 2d 721 (1974), *death sentence vacated*, 428 U.S. 903 (1976). Even the part which was not responsive, having to do with the custom of the store, was the subject of earlier testimony by the witness without objection. This assignment of error is overruled.

[2] One of the state's witnesses, Ruby Spencer, testified that he had pawned his .410 gauge shotgun to defendant Miller several days before the shooting under investigation. On the day following the shooting, Ruby Spencer testified he saw defendant Miller in downtown Washington and told him he had been paid and would pick up his gun later. When he arrived home at 11:00 p.m. on 28 September, Miller was there together with several other people who were living with Spencer at the time. Spencer asked Miller for his gun. He testified, "And he wouldn't let me have the gun in front of them . . . . " Spencer said he then went into a "small hall outside the room" where "Miller gave me the gun back."

Defendants objected and moved to strike his statement that Miller wouldn't let him have the gun in front of the other people in the apartment. This testimony was not inadmissible as a conclusion or opinion as defendants argue. It was simply a statement of fact. At least it was admissible as an "instantaneous conclusion of the mind" or a "shorthand statement of the fact." 1 Stansbury's North Carolina Evidence § 125 (Brandis rev. 1973) (hereinafter North Carolina Evidence), and cases therein collected.

[3] Defendants next assign as error what they contend to be the trial judge's inadequate summarization of the evidence in violation of G.S. 15A-1232, which provides:

> "In instructing the jury, the judge must declare and explain the law arising on the evidence. He is not required to state the evidence except to the extent necessary to explain the application of the law to the evidence. He must not express an opinion whether a fact has been proved."

Specifically defendants complain of the trial court's failing to summarize the testimony of their witness, William Duke. Duke had

testified that according to surveys and photographs he had made of the Stop-N-Go store, Jimmy Lee Cole, when he pulled up to the gas pump on the night in question, would have had a clear view of the interior of the store in the area around the cash register. Defendants relied on this evidence, apparently, to impeach Cole's testimony that he saw no one other than the deceased in the store both when he purchased and pumped the gas. Defendants contend that it would have been impossible for Cole to have bought gas at or about the time the defendants were alleged to have been in the store without seeing them; therefore, his entire testimony as to what happened should be disregarded by the jury.

Suffice it to say that an examination of the charge reveals that the court summarized the evidence both for the state and the defendants in a manner sufficient to permit him to apply the law applicable to the case. "[A]bsent a special request, the court is not required to summarize the evidence which merely reflects upon the credibility of a given witness." *State v. Alston*, 294 N.C. 577, 589, 243 S.E. 2d 354, 363 (1978). There was no such request made here. This assignment of error is, consequently, overruled.

II.

We now consider those assignments of error raised only by defendant Miller. A number of these we may confidently overrule without discussion. By them defendant complains of (1) the state's being permitted to inquire into matters on redirect which were not raised during cross-examination, (2) "an unreasonable restraint on defendant's cross-examination," (3) the admission of prior statements of the state's witness Jimmy Lee Cole for purposes of cross-examination, and (4) admission of an allegedly unresponsive answer. These particular assignments of error, like those dealt with summarily in *State v. Freeman*, 295 N.C. 210, 218, 244 S.E. 2d 680, 685 (1978), "are either patently without merit or challenge miniscule errors which are harmless beyond a reasonable doubt. Any discussion of these questions would necessarily be (1) a mere repetition of . . . well-established rules . . . and (2) a wordy demonstration that the testimony challenged" was indeed admissible. Thus, as in *Freeman*, "we have decided not to add to the surplusage of such discussions already in the books." *Id.* at 219, 244 S.E. 2d at 685.

We turn now to several of defendant Miller's contentions which, by comparison at least, are somewhat more serious than

those to which we have summarily referred.

**[4]**   Officer Respass testified to what Jimmy Lee Cole had told him about the incident and that he had reduced Cole's statement to writing. The prosecutor asked, "Did [the written statement] vary in any way from the first time you talked to him?" Over objection Respass was permitted to answer, "The only variance [was that] it was in more detail." Respass then read Cole's written statement into evidence.

Defendant contends that Respass's comparison of the two statements was inadmissible opinion testimony. We agree. The jury was as competent as Respass to make a comparison and determine whatever consistencies or inconsistencies there were in the two statements. *State v. Shuford*, 152 N.C. 809, 67 S.E. 923 (1910); *State v. McLaughlin*, 126 N.C. 1080, 35 S.E. 1037 (1900). *Compare* however, *State v. Bush*, 289 N.C. 159, 221 S.E. 2d 333 (1976). *See generally* 1 North Carolina Evidence § 124. Clearly, however, the admission of this testimony could not have prejudiced defendant. In fact there was no material difference between the oral and written statements. Both were before the jury. Counsel for both sides, consequently, could make whatever they desired of consistencies or inconsistencies in the statements. The jury was not, and we are satisfied it did not consider itself to be, bound by Respass's characterization of the statements. There is no reasonable possibility that had he not given this opinion a different result would have been reached at trial. *See* G.S. 15A-1443(a). This assignment of error is overruled.

**[5]**   Defendant Miller assigns as error the failure of the trial judge to instruct the jury that Jimmy Cole's written statement was admitted solely for purposes of corroboration. When Officer Respass took the stand on redirect examination the trial judge instructed the jury:

> "[M]embers of the jury, what this witness is getting ready to testify as to what Jimmy Cole told him is for the purpose of corroborating what Mr. Cole said when he was on the stand, if you find that it does corroborate him . . . . "

Officer Respass then related Cole's oral statement. Defendant requested the above instruction be repeated prior to Respass's read-

ing Cole's written statement. This request was denied. Respass then read Cole's written statement. The statement was in Detective Howard's writing and signed by Cole.

Although an abundance of precaution might have dictated that the trial judge repeat the instruction, his failure to do so was not legal error. The instruction given pertained to "what Jimmy Cole told him [Respass]," and thus was broad enough to include both Cole's oral and written statements. Furthermore, there was no material variation between the two statements. In effect Cole gave only one statement, which the investigating officers ultimately reduced to writing. Therefore, the single limiting instruction was itself sufficient to ensure that the oral and written versions of Cole's statement were considered by the jury only for corroborative purposes. This assignment of error is overruled.

**[6]** Defendant Miller next assigns as error the prosecutor's question, asked upon cross-examination, "How much time have you spent in prison all together, Mr. Miller?" After his objection to this question was overruled, Miller answered, "About sixteen or seventeen years, give or take."

The prosecutor's question as to the length of time defendant spent in prison was not improper, and defendant's objection to it was properly overruled. We held in *State v. Finch*, 293 N.C. 132, 235 S.E. 2d 819 (1977), "Where, for purposes of impeachment, the witness has admitted a prior conviction, the time and place of the conviction and the punishment imposed may be inquired into upon cross-examination. This is permissible regardless of whether the witness is the accused." *Id.* at 142-43, 235 S.E. 2d at 825. In *Finch* we noted the necessity of first showing that the witness was convicted of an offense prior to cross-examining him relative to the punishment imposed. Here, Miller admitted on direct examination the various crimes of which he had been convicted and the punishments imposed in regard thereto. Consequently, the prosecutor's inquiry into the total punishment imposed was nothing more than a clarification of Miller's testimony on direct examination. This assignment of error is overruled.

## III.

We now discuss one assignment of error raised only by defendant Williams.

[7]   Defendant Williams contends an insufficient foundation was laid to permit Dr. Lawrence Harris to render an expert opinion as to the size, or gauge, of the gun used to murder Perry Ebron. Dr. Harris first testified that he was a professor of pathology at East Carolina School of Medicine and Regional Pathologist for the Chief Medical Examiner's Office for the State of North Carolina. He had previously held a similar position in Vermont. Dr. Harris was thus qualified and permitted to testify as an expert forensic pathologist. Dr. Harris then described his findings on examination of James Ebron's body and gave his opinion as to the cause of death. Over objection Dr. Harris was permitted to give his opinion as to the size, or gauge, of the murder weapon. He testified, "The entrance wound is quite small for a shotgun . . . therefore, from my experience, personal and professional, with shotguns, it had to be something in the range of a 28 gauge or a .410 gauge . . . ." On cross-examination the witness admitted that "the size of the hole located in the deceased's mouth area would be determined to a large extent by the distance from which the gun was fired." He further testified on cross-examination, however, "It is my opinion that neither a twelve gauge, sixteen gauge nor a twenty gauge shotgun could have produced the size hole which I examined in deceased. In my opinion any one of those three guns would have produced a larger hole regardless of the distance within a range of several yards that you might be referring to."

We find no error here. Expert medical testimony is permitted on a wide range of subjects including the nature of the instrument producing a particular injury. 1 Stansbury's North Carolina Evidence § 135, n. 51 and cases cited therein. Dr. Harris was qualified as an expert forensic pathologist. As such his skills included not only determining the cause of death from a medical standpoint but also determining the nature of the instrumentality of death in a homicide case including, for example, the caliber of a bullet, or the gauge of a gun which caused the death-dealing wound. He is in a better position to have an opinion on these subjects than the jury. This assignment of error is overruled.

Two other of Williams' assignments of error relating to the admission of evidence and for which he cites no authority are patently without merit and not deserving of discussion. *See State v. Freeman, supra,* 295 N.C. 210, 244 S.E. 2d 680.

In the trial of these defendants we find

No error.

Justice MEYER did not participate in the consideration and decision of this case.