STATE OF NORTH CAROLINA v. DARRELL WAYNE PACKER

No. 8212SC874

(Filed 5 April 1983)

1. **Automobiles and Other Vehicles §§ 113.1, 127.2— driving under the influence—involuntary manslaughter—defendant as driver of vehicle—sufficiency of evidence**

    The evidence was sufficent to permit the jury to find that defendant was the driver of a vehicle at the time it struck a pedestrian so as to support his conviction of driving under the influence and involuntary manslaughter where the owner of the vehicle testified that he was a passenger therein at the time

of the accident and that defendant was driving the vehicle at that time, although there was evidence that the vehicle doors were so badly jammed shut after the accident that they had to be pried open, and the owner was the only person in the vehicle when witnesses and a highway patrolman arrived at the scene, and although defendant testified that he had left the car and was not driving at the time of the accident.

**2. Criminal Law § 86.3— impeachment of defendant—prior convictions—details of crimes**

When a defendant is cross-examined about prior convictions for impeachment purposes, and defendant has admitted a prior conviction, the time and place of the conviction and punishment imposed may be inquired into, but defendant ordinarily may not be examined about the details of the crime by which he is being impeached.

**3. Criminal Law § 85.3— character evidence—cross-examination of defendant**

A defendant whose character is in question may be cross-examined about specific wrongful acts to show his character.

**4. Criminal Law § 85.1— character evidence—failure to hear anything bad about defendant**

Defendant's character witnesses should have been permitted to testify that they had never heard anything bad about the defendant for the purpose of showing his good character.

APPEAL by defendant from *Bowen, Judge.* Judgment entered 21 April 1982 in Superior Court, CUMBERLAND County. Heard in the Court of Appeals 15 February 1983.

The following facts were undisputed at trial. Defendant and Ray Johnson were out together in Johnson's car during the evening of 19 December 1981. They visited several bars, drinking at each establishment. Defendant was driving during this period. Around midnight or during the early morning hours of 20 December 1981, Johnson's car struck and killed a pedestrian, Randy Yara. The accounts differ as to what happened after defendant and Johnson left the Lamplighter, a drinking establishment, around 11:00 p.m. on the 19th of December.

State's Evidence

Johnson testified that he and defendant left the Lamplighter in Johnson's car (defendant was driving) in search of another place to get a drink. He testified further that as he bent over to adjust the tape player, he felt the car leave the road, looked up, and saw a pedestrian in their path on the shoulder of the road. He yelled; they hit the pedestrian from behind. After the car struck

Yara, it rolled, skidded and came to rest on its top. Johnson "blacked out." When he regained consciousness he found the car doors so badly jammed shut that they had to be pried open. Although Johnson was the only person in the car when witnesses and the Highway Patrolman arrived at the scene, he nevertheless maintained that defendant was driving at the time of the accident. Defendant's hat and jacket were found in Johnson's car. Johnson was arrested for driving under the influence upon his release from the hospital. On the strength of Johnson's statements concerning who was driving the vehicle, and the officer's subsequent investigation, defendant was later arrested.

Defendant's Evidence

Defendant testified that after he and Johnson left the Lamplighter they stopped at a Party Store and bought more beer. When they left, defendant was still driving. They then went to his sister's trailer, where he got out. Johnson drove away. Defendant fell asleep on his sister's couch around midnight. He was awakened around 4:00 a.m. by his sister who told him that a Highway Patrolman had come to see him. The patrolman questioned him about his activities that evening and told him about the accident. He was later charged with driving under the influence and involuntary manslaughter.

Defendant was found guilty of both charges. From a judgment imposing consecutive active sentences of six (6) months and three (3) years respectively, defendant appeals to this Court.

*Attorney General Edmisten, by Assistant Attorney General Thomas B. Wood, for the State.*

*Appellate Defender Adam Stein, by Assistant Appellate Defender Nora B. Henry, for defendant appellant.*

BECTON, Judge.

I

Defendant raises four assignments of error and proffers three arguments on appeal: (i) that the evidence was insufficient to persuade a rational fact finder, beyond a reasonable doubt, that defendant was the driver of the vehicle at the time of the collision; (ii) that defendant is entitled to a new trial because of the

prosecution's improper inquiry into his prior convictions during cross examination; and (iii) that the trial court erred when it excluded competent evidence of defendant's good character.

Although our analysis of defendant's assignments of error and exceptions concerning his third argument reveals the existence of reversible error, entitling defendant to a new trial, we nevertheless discuss all of his arguments.

## II

[1] By his assignment of error number one, defendant argues that he is entitled to judgment of nonsuit because the evidence adduced against him at trial was insufficient to permit a rational trier of fact, beyond a reasonable doubt, to find each element of the crimes charged. While defendant has correctly stated the nonsuit standard, *State v. Revelle*, 301 N.C. 153, 270 S.E. 2d 476 (1980), we note also that the evidence must be interpreted in the light most favorable to the State, and all reasonable inferences favorable to the State must be drawn therefrom. *State v. Miller*, 270 N.C. 726, 154 S.E. 2d 902 (1967). We have examined the evidence in this record and find it sufficient to submit the issue of defendant's guilt to the jury. This assignment of error is overruled.

## III

[2, 3] Defendant's assignment of error number two is directed toward the admission of evidence of his prior convictions. He objects to the following testimony, brought out on cross examination when he was on the stand:

Q. Mr. Packer, that red light or blue light—you didn't run a red light in South Carolina, did you? You weren't convicted of running a red light. You were convicted of failing to stop for a blue light.

A. Yes, sir.

Q. Weren't you also convicted, at that time, of driving under the influence?

A. No, sir.

Q. Were you found in the car at that time, sir?

A. Sir?

State v. Packer

Q. Were you found in the car at that time?

MR. SMITH: Objection.

COURT: Overruled.

Q. Were you found in the car, sir?

A. Found in what car?

Q. When you were—

A. My vehicle when I was in South Carolina?

Q. Yes, sir.

A. No, sir. I was out of the car.

Q. Where were you?

MR. SMITH: Objection.

COURT: Overruled.

A. I was about a hundred feet from my car.

Q. And where exactly a hundred feet from your car were you?

MR. SMITH: Objection.

COURT: Overruled.

A. I was behind it.

Q. You were hiding, weren't you?

MR. SMITH: Objection.

COURT: Overruled.

A. I wasn't really hiding—the patrolman that stopped me—when he got out and I got out he grabbed his gun and I got scared.

Q. And you ran?

A. And I came back.

Q. After the dogs found you?

MR. SMITH: Objection.

COURT: Overruled.

A. No, sir. No dogs.

Q. No dogs?

A. There were no dogs there.

Because the issue raised in this argument may confront the trial court on retrial, we state the rules concerning the use of (a) a defendant's prior convictions, and (b) his specific wrongful acts. First, when evidence of a defendant's prior conviction is to be introduced for impeachment purposes, and the witness has admitted that prior conviction, "the time and place of the conviction and punishment imposed may be inquired into upon cross examination." *State v. Finch*, 293 N.C. 132, 235 S.E. 2d 819 (1977). As the *Finch* court aptly stated:

> Strong policy reasons support the principle that ordinarily one may not go into the details of the crime by which the witness is being impeached. *Such details unduly distract the jury from the issue properly before it, harass the witness and inject confusion into the trial of the case.* [Emphasis added.]

*Finch*, at 141, 235 S.E. 2d at 824.

Second,

> [w]here a person's *character is only collaterally in issue*, to allow it to be proved by specific acts of good or bad conduct would consume an unreasonable amount of time, distract the jury's attention from the real issues in the case, lead to acrimonious disputes, and unfairly surprise the opponent, who may be presumed to be ready to defend his own general reputation or that of his witnesses, but not to meet specific charges against either without notice. [Citations omitted.] [Emphasis added.]

1 *Brandis on North Carolina Evidence* § 111 at 406 (2d Rev. Ed. 1982). However, a defendant whose *character is in question* may be cross-examined about specific wrongful acts to show his character. Even "disparaging facts may be elicited provided the questions are based on information and are asked in good faith, and subject of course to the witness's privilege against self-

incrimination and to the control of the judge over questions that tend only to annoy or harass the witness." *Id.* at 407-410.

## IV

**[4]** Defendant sought to introduce evidence of his good character and reputation through the testimony of two witnesses, Captain Robert Mumblow and Betty Strickland. Both testified on direct examination that defendant's character and reputation were good. They admitted, during cross examination, that their opinions were based on their personal knowledge and observations, rather than general community perceptions. However, both witnesses testified on redirect that they had never heard anything bad about the defendant. Apparently, the trial judge erroneously believed that the witnesses' redirect testimony was incompetent to prove defendant's good character in the community. For example, the transcript of the proceedings reflects the following:

REDIRECT EXAMINATION BY MR. SMITH:

Q. Did you ever hear anything bad about him?

A. No, sir. I haven't.

MR. RICHARDSON: Your Honor, I would like an instruction to the jury to disregard what she has said.

COURT: The jury is instructed to disregard the testimony of the defendant's character and reputation in the community in which he lives.

This was error and requires a new trial.

A criminal defendant is always permitted to offer character evidence as substantive evidence of his guilt or innocence. *State v. Williams,* 299 N.C. 652, 263 S.E. 2d 774 (1980). Although the most common method of proving character is by general reputation in the community, that is not the exclusive way to pull the laboring oar. As we said in *State v. Floyd,* 56 N.C. App. 459, 289 S.E. 2d 139 (1982), a case determined by this same issue:

We conclude that where a witness testified that he has lived for some time in the same community with the person whose character is at issue, has known that person personally, and has heard nothing negative about him, the witness's

testimony is admissible as evidence of reputation. [Citations omitted.] The trial court erred in concluding otherwise.

In the case at bar, there were no witnesses to the disputed events other than the defendant and the prosecuting witness. The outcome of the trial, therefore, necessarily turned on which version of the facts the jury believed, *i.e.*, which witness the jury found more credible. Accordingly, we find the court's error in excluding evidence of defendant's reputation was prejudicial and entitles him to a

New trial.

*Floyd*, at 461, 289 S.E. 2d at 140.

Likewise, for the reasons set forth in part IV of this opinion, defendant is entitled to a

New trial.

Judges ARNOLD and PHILLIPS concur.