LOIS TODD, by her Next Friend, WILLIAM KELLY TODD, v. EARL KEITH WATTS and ETHEL WATTS.

(Filed 3 February, 1967.)

1. **Automobiles §§ 43, 48— Passenger in one car may recover of driver of other car involved in collision if his negligence constitutes a proximate cause of collision.**

In this action by a passenger in an automobile against the driver of the other vehicle involved in the collision, plaintiff's evidence was to the effect that the car in which she was a passenger was travelling west, that defendant's vehicle had a veneer board in its left window where glass should have been, obstructing the driver's view to the left, and that defendant entered the intersection from the north as the automobile in which plaintiff was riding was clearing the intersection, and a collision occurred between the left corner of the cab of defendant's truck and the right fender and headlight of the automobile in which plaintiff was riding. *Held:* Nonsuit was correctly denied, notwithstanding evidence of negligence on the part of plaintiff's driver in entering the intersection as the traffic control light was changing to red, since defendant is liable to plaintiff if defendant driver was guilty of any negligence constituting a proximate cause of the accident.

2. **Evidence § 42—**

The opinion of an expert must be based upon facts within the personal knowledge of the expert or upon facts, supported by evidence, stated in a proper hypothetical question.

3. **Evidence § 51—**

Testimony of a medical expert to the effect that plaintiff's lumbo-sacral strain and persistent headaches were the result of the automobile accident in suit is incompetent when the testimony is not based upon facts within the personal knowledge of the witness or upon proper hypothetical questions based upon facts in evidence as to the accident and the injuries received by plaintiff therein.

Parker, C.J., dissenting.

Appeal by defendants from *McKinnon, J.,* April 7, 1966 Civil Session of Columbus.

Personal injury action growing out of a two-vehicle collision at an intersection.

Between 4:00 and 5:00 during the afternoon of October 27, 1962, plaintiff — then 16 years old — was a passenger in the front seat of the Ford automobile being operated by her father, W. K. Todd. The Todd automobile was proceeding in a westerly direction on Highway No. 701, approaching its intersection with Stake Road. This intersection was controlled by an electric traffic signal, which was operated by a trip on Stake Road. Within the intersection a collision occurred between the Todd automobile and a pickup truck owned by defendant Ethel Watts and operated by her son, Earl Keith

Watts (Earl) who, with his wife and baby, was then living with his mother.

Plaintiff alleges: Mrs. Watts maintained the truck for the use and convenience of her family, and, at the time of the collision, Earl was operating it as her agent and within the scope of the purpose for which she kept the truck. The collision was caused by the negligence of Earl in that, *inter alia,* (1) he failed to keep a proper lookout; (2) he failed to yield the right of way to the Ford automobile, which was already in the intersection; and (3) he operated the truck when the glass in its left front window had been replaced by a board, which obscured his vision. In the collision plaintiff sustained permanent injuries.

Answering, defendants denied all material allegations of the complaint and alleged that the collision was proximately caused by the sole negligence of W. K. Todd in that he entered the intersection without keeping a proper lookout at a time when the traffic light facing him was red.

Plaintiff's evidence tended to show: Todd approached the intersection at 20 MPH. When he was 150 feet away, the light facing him was green, but he was expecting it to change. Thirty yards away, he observed the Watts' truck waiting in Stake Road on the north side of the intersection. Its engine was turned to the west toward Tabor City. Todd noticed a piece of veneer board in its left window, where a glass should have been. About the time Todd went under the light, it changed. When he was 10-12 feet from the truck, it pulled into the intersection. The right fender and headlight of the Todd vehicle struck the left corner of the cab of the truck just under the gasoline spout. Plaintiff was thrown forward; her head broke the windshield, and her knees hit the dashboard. She was given first aid by a local physician, who bandaged her knees; she was not hospitalized. Thereafter, she began to have continuous headaches and backaches. About five months after the accident, on March 23, 1963, plaintiff consulted Dr. J. Burr Piggott, Jr., an orthopedic surgeon of Florence, South Carolina. He found the "suggestion of a spinal bifida at S-1 posterior neural arch" and some straightening of the lumbar spine and a mild reversal of same, conditions which, he thought, were congenital and capable of producing discomfort. Trauma, however, was usually required to make them painful. Plaintiff's low back motion was limited in flexion and in extension, but Dr. Piggott found no true spasm. He prescribed a hard bed, girdle support, use of a heating pad, deep heat treatment by her physician, and limitation of stooping, bending, and heavy lifting. He saw plaintiff once more in October 1964, when he found

her condition essentially unchanged. In Dr. Piggott's opinion, plaintiff would have some "minimal permanent disability".

In the spring of 1963, plaintiff graduated from high school. Because she "didn't feel well at all," she did not take a job until December 1963. From then until April 1964, she worked as a receptionist. From April until September 1964, she worked as a sewing machine operator, although she lost 25-30 days because of headaches and backaches. In September 1964, she gave up that job to get married. Since November 1964, she has worked for Mullins Textile.

Defendants' evidence tended to show: Earl stopped on the north side of the intersection in obedience to the red light then facing him. While thus stopped, he observed the Todd vehicle slowing down as it approached the intersection. When the light for Stake Road changed to green, Earl pulled into the intersection and made a right turn toward Tabor City. When his wife "hollered," Earl whirled around to his left to see what was happening and the right front of the automobile hit the left side of the cab of defendants' truck. The left window of the cab had been broken out and replaced with a piece of veneer board. The driver's only view to the left was "a little vent window (8-10 inches wide) which was in the front of the door." Earl did not own a motor vehicle.

The jury answered the issues of negligence, agency, and damages in favor of plaintiff. From judgment on the verdict, defendants appealed, assigning errors.

*Williamson & Walton for plaintiff.*
*Marshall & Williams for defendants.*

Sharp, J. Plaintiff's evidence was ample to overcome both defendants' motions for nonsuit. 3 Strong, N. C. Index, Negligence § 8 (1960). There must, however, be a new trial for errors in the admission of evidence. The court overruled defendants' objections to the following questions, which plaintiff's counsel asked Dr. Piggott, and denied defendants' motions to strike the answers elicited:

"Q. Doctor, will you state what diagnosis you made as a result of your examination on March 23rd, 1963?

"A. Yes, sir; my diagnosis reads, from my records: Auto accident with original contusion injuries of forehead and scalp and skull, without fractures, plus abrasion injuries of the knee that have healed, plus wrenching and contusion injuries of the low back with persistent chronic low back pain.

"Q. Doctor, as a result of talking to Mrs. Batten on March 23rd, 1963, did you form an opinion, or do you have an impres-

sion as to whether she will have any type permanent disability as a result of her injuries she sustained in the accident on October 26th *(sic)*, 1962?

"A.  Yes, sir.

"Q.  What is that opinion?

"A.  I felt patient would have some minimal permanent disability — minimal residual permanent disability as regards her low back wrenching injuries and her persistent headaches. I went on to state I made no attempt to examine the patient's eyes, or evaluate patient's ocular complaints.

". . . My impression was she had some continuing lumbosacral strain and persistent headaches as a result of her auto accident.

"Q.  Doctor, did you find any scars on her knees which she received in the accident, or any scars on her legs?

"A.  There were no major scars. She had abrasion injuries and I have no record of any major scarring of her knees or legs.

\*  \*  \*

"Q.  The congenital finding that you made on Mrs. Batten's back, could it have been aggravated by an injury or blow she received in this automobile accident?

"A.  Yes, sir."

Since it is the jury's province to find the facts, the data upon which an expert witness bases his opinion must be presented to the jury in accordance with established rules of evidence. Stansbury, N. C. Evidence § 136 (2d Ed. 1963). "It is well settled in the law of evidence that a physician or surgeon may express his opinion as to the cause of the physical condition of a person if his opinion is based either upon facts within his personal knowledge, or upon an assumed state of facts supported by evidence and recited in a hypothetical question." *Spivey v. Newman,* 232 N.C. 281, 284, 59 S.E. 2d 844, 847. A witness is not permitted to base an opinion upon facts of which he has no knowledge. *Robbins v. Trading Post, Inc.,* 251 N.C. 663, 111 S.E. 2d 884. This, however, is what Dr. Piggott purported to do. He had no personal knowledge that plaintiff was involved in an automobile accident on October 27, 1962, or, if she was, that she sustained any injuries in the accident. Yet, he stated to the jury as a fact that, in the accident in suit, plaintiff had sustained, *inter alia,* "wrenching and contusion injuries of the low back with persistent chronic low back pain"; that she had "continuing lumbo sacral strain and persistent headaches as a result of her automobile accident"; and that her congenital spinal defects could "have been aggravated by an injury or blow she received in

this automobile accident." Whether plaintiff had persistent head-aches and continuous backaches and, if so, whether the collision caused them, were crucial questions in the case.

The doctor could not assume the cause or source of the symptoms which plaintiff reported to him and which he found five months af-ter the accident in suit. His opinion as to the possible cause of these symptoms and their probable permanency, should have been elicited as the response to a properly phrased hypothetical question which included all material facts necessary to enable him to form a satis-factory opinion. Stansbury, N. C. Evidence § 137 (2d Ed. 1963).

New trial.

PARKER, C.J., dissenting: This action was commenced by the issuance of summons on 11 August 1964.

The record shows that Dr. J. Burr Piggott, Jr., testified before the quoted part of his testimony in the majority opinion in sub-stance, except when quoted: On 23 March 1963 he first saw plain-tiff and made an examination of her in his office in South Carolina. He testified:

"At the time of my examination, I obtained a history of her injuries or her complaints. (Defendants requested and the Court instructed the Jury, that any statement by the witness as to what the Plaintiff said to him is to be considered by the Jury as it may tend to corroborate or support her testimony as she has previously testified here in Court, if the Jury finds that it does corroborate her testimony. It is not substantive evidence.) The patient gave a history of having been involved in a two car collision or auto accident on the 26th of October, 1962, at 4:00 p.m. in the afternoon when she was riding in the front right hand seat of a car driven by her father. The patient told me she was thrown forward when the collision occurred, strik-ing her head and forehead against the front windshield glass, breaking the glass and abrading her forehead. She told me she was dazed for a few minutes, and she also wrenched and con-tused both knees and her low back. The patient further stated she was taken to her family physician immediately, Dr. Charles Simpson, Tabor City, who rendered first aid, cleaned up and treated her abrasions, and advised conservative treatment. She told me she had been up and around since the accident and had continued her schooling, but had not participated in any sports activities. She had continued complaining of pain in her back and complained of frontal headaches with difficulty in vision. The wrenching injuries to her knees has largely subsided. Pa-

tient had been up and around but she said she was having trouble with her low back and headaches."

In *Penland v. Coal Co.*, 246 N.C. 26, 97 S.E. 2d 432, Johnson, J., writing for the Court said:

"The defendants in their brief concede that the direct testimony of Dr. Chapman, 'standing alone, if competent, would support an award.' However, the defendants contend that Dr. Chapman's opinions as to plaintiff's alleged disability should be disregarded and treated as incompetent evidence in view of the witness' admissions made on cross-examination to the effect that the testimony was based upon 'subjective statements made by the claimant.'

"As to this contention, the rule is that ordinarily the opinion of a physician is not rendered inadmissible by the fact that it is based wholly or in part on statements made to him by the patient, if those statements are made, as in the instant case, in the course of professional treatment and with a view of effecting a cure, or during an examination made for the purpose of treatment and cure. 'In such cases statements of an injured or diseased person, while not admissible as evidence of the facts stated, may be testified to by the physician to show the basis of his opinion.' 20 Am. Jur., Evidence, Sec. 866, p. 729; Annotation: 65 A.L.R. 1217, p. 1223 *et seq.* See also: Annotations: 67 A.L.R. 10, 11, 18; 80 A.L.R. 1527; 130 A.L.R. 977; Wigmore on Evidence, Third Ed., Sections 688, 1718, and 1720; Rogers on Expert Testimony, Third Ed., Section 131, p. 301 *et seq.;* McCormick on Evidence (Hornbook), Sec. 266; *Bryant v. Construction Co.*, 197 N.C. 639, 150 S.E. 122, and cases there cited; *Martin v. P. H. Hanes Knitting Co.*, 189 N.C. 644, 127 S.E. 688."

The testimony of Dr. Piggott I have quoted above was admitted in evidence without objection by defendant. In my opinion, the testimony of Dr. Piggott, as quoted in the majority opinion, was competent and properly admitted in evidence. I do not agree with the majority that such testimony was inadmissible in evidence, and necessitates a new trial. To hold, as the majority opinion does, that Dr. Piggott's diagnosis and opinion are inadmissible in evidence because based in part on statements given to him in 1963 by plaintiff when she was examined by him for the purpose of rendering to her medical assistance, is unpractical, because a doctor customarily relies upon such statements made to him by a patient in the practice

of his profession, and such a holding defies the usual processes of medical thought.

I vote to sustain the verdict and judgment below.