STATE OF NORTH CAROLINA v. ALVIN EUGENE JONES

No. 8114SC824

(Filed 16 March 1982)

1. **Criminal Law § 52— expert testimony based on personal knowledge—hypothetical questions not necessary**

    A firearms identification expert could properly give testimony comparing the velocities and characteristics of weapons and ammunition without the use of hypothetical questions since the testimony was based on the expert's own personal knowledge.

2. **Criminal Law §§ 42.4, 42.6— chain of custody of rifle—connection of articles with crime**

    The State did not fail to establish the chain of custody of a rifle between the time of an alleged murder and when it was turned over to the State by defense counsel three days later since the remote possibility that the rifle was switched while in the possession of defendant's attorney was ruled out by testimony of a firearms identification expert who positively determined that two of the cartridges found at the crime scene had been fired from that particular rifle. Furthermore, the State sufficiently established that the rifle, a bullet found in the victim's body, and cartridge cases found at the crime scene were involved in the incident in question for their admission into evidence.

3. **Homicide § 21.7— second degree murder—sufficiency of evidence**

    The evidence was sufficient to support defendant's conviction of second degree murder where there was substantial evidence tending to show that defendant fired the shot which caused decedent's death, notwithstanding there was some evidence that another man was also firing a pistol at decedent.

4. **Homicide § 19.1— self-defense—character of deceased as violent person—defendant's knowledge of acts**

    The trial court in a homicide case did not err in the exclusion of testimony by defendant's wife tending to show the character of the deceased as being that of a dangerous and violent person where there was no evidence that the particular acts of violence by decedent about which defendant's wife attempted to testify were known to the defendant.

5. **Criminal Law § 117.2— instruction on credibility of witnesses**

    The trial court's instruction that if the jury believed the testimony of an interested witness in whole or in part, "then you should treat what you believe the same as you would treat other believable evidence" did not invade the province of the jury to assign different weight and importance to the testimony of the various witnesses.

6. **Homicide § 28— instructions on "without justification or excuse"**

    The trial court's confusing instructions on "without justification or excuse" were not prejudicial where the trial court thereafter properly charged that a killing would be excused entirely on the ground of self-defense if certain circumstances existed.

**7. Homicide § 23.1— instructions on inferring intent**

The trial court's instruction that "one arrives at the intent of another person by such just and reasonable deductions from the circumstances proven as a reasonably prudent person would ordinarily draw therefrom" did not allow the jury to infer defendant's intent from circumstances without requiring the jury to find the circumstances specifically and was proper.

**8. Homicide § 24.1— instructions on presumptions of unlawfulness and malice**

The trial court's instructions in a second degree murder case did not set forth mandatory presumptions of unlawfulness and malice from a shooting found to be intentional. Furthermore, there was no merit to defendant's contention that presumptions of unlawfulness and malice are not constitutionally acceptable where there is evidence of self-defense.

**9. Homicide § 28.3— self-defense—instruction on aggression or provocation by defendant**

The trial court's instruction in a homicide case that if defendant voluntarily and without any provocation entered into the fight, "he making the first move," then he would be the aggressor unless he thereafter attempted to abandon the fight and gave notice to the victim that he was doing so was not erroneous.

**10. Criminal Law § 118— instructions—use of "convictions" rather than "contentions"**

Defendant was not prejudiced by the court's instruction that it was the duty of the jury to remember and consider the "convictions" urged by counsel in their arguments rather than the "contentions" of counsel.

APPEAL by defendant from *Herring, Judge.* Judgment entered 13 March 1981, in Superior Court, DURHAM County. Heard in the Court of Appeals 13 January 1982.

Defendant was indicted and tried for the second degree murder of Courtney D. Rorie. At trial, the State's evidence tended to show that, sometime in September 1980, Courtney Rorie returned from Florida to Durham where his estranged wife, Gracey Rorie, had recently died. On 26 September, he was with his brother William Rorie and his nephew Timothy Rorie at 319 Chadwick Road where Gracey Rorie had lived. While the three men were in the house searching for Gracey Rorie's Social Security number, defendant drove up in a white car and parked behind William Rorie's truck. Defendant asked Timothy Rorie if William were there, and William emerged from the house to talk to defendant. When he did, defendant demanded to know what the men were doing there. When Courtney Rorie came out of the house, defendant moved to the back, left door of his car, pulled out a rifle, and began to fire at him. At this point, both Timothy

and William Rorie saw Courtney Rorie run around the front end of the truck and open the right door to the truck. As defendant fired toward the truck, William Rorie watched as his brother was shot in the face through the back window. When defendant moved to the right side of his car and continued firing, Courtney Rorie got up and began to run. Timothy Rorie saw his uncle grab his body, and he saw blood on the back of his t-shirt.

Meanwhile, William Rorie had thought of his shotgun in his truck and had retrieved it. He tried to fire at defendant, but defendant ducked down beside his car. As the two men see-sawed back and forth, defendant hollered out, "Larry, get him from that side." At that point, William Rorie did not see his brother but he did see two or three people at the corner of the house. Fearing for his own safety, William Rorie ran around the house, and Timothy Rorie let him in the back door. Defendant returned to his car and quickly drove away.

The State's evidence also consisted of testimony by a next door neighbor Willie Mae Tinnen who observed the fracas from her home. When she first heard shots, she ran to the front door and saw a man named "James" at the corner of the driveway. When she realized he had a pistol and was shooting at someone, Tinnen opened the door, looked out, and saw Courtney Rorie sitting down in front of the truck. To Tinnen, Rorie appeared to have a shotgun or rifle, but he did not appear to be firing it. A few minutes later, Tinnen observed James go back across the front yard, get into a cream colored car which had just driven up and ride away. Defendant was in his car just behind the cream colored car.

Courtney Rorie was found dead in the woods behind 325 Chadwick. The forensic pathologist testified that Rorie had three gunshot entrance wounds in his body. One was in the lip; the second was in the right back with an exit wound in the left chest; and the third was in the chest. In the pathologist's opinion, Courtney Rorie died as a result of extensive internal bleeding because of the gunshot wounds he received. The two major wounds were the ones to the chest and back, both of which were potentially lethal. The pathologist, Dr. Eric Mitchell, concluded that Rorie died as a result of the wound in the back due to the fact that it caused more rapid bleeding. Under cross-examination, Dr. Mitch-

ell stated that he thought the wound in the back was caused by a bullet fired from a rifle.

The defendant presented evidence tending to show that he was married to the sister of Gracey Rorie and that, prior to 26 September 1980, defendant had observed Courtney Rorie fight with several people, including defendant's sister-in-law. Defendant was aware of Rorie's reputation within his community as that of a violent and dangerous fighting man. He also knew that Rorie had been convicted of manslaughter.

On 26 September, defendant went to 319 Chadwick, the home of his deceased sister-in-law after talking to a cousin of Gracey Rorie. The cousin had told defendant that Courtney Rorie had called earlier to say that he was going to 319 Chadwick to get some of the furniture from the house. Defendant agreed to drop by the house and find out what was going on.

After he arrived at the house, he asked Timothy Rorie to tell William Rorie to come out. While the two men were talking, the front door of the house flew open and Courtney Rorie raced from the house. Defendant panicked when he saw Rorie leap from the porch. He reached into his car, picked up his rifle and clipped it. Rorie ran around the front of the truck, opened the door, and appeared to be getting something from behind the seat. Thinking that Rorie was getting a gun and that defendant could not get out of the driveway safely, defendant shot at the back window of the truck. When Rorie squatted down, defendant fired again. Then Rorie ran to the back of the house. At this time, defendant realized that William Rorie had a gun, and the two of them tried to line up good shots against one another. Although defendant could not tell if William Rorie shot at him or not, he did hear at least three shots from, he thought, the rear of the house. Defendant saw a cream colored car and, thinking it was a sheriff's car and hoping to scare William, he hollered, "He's around back." When William ran to the back of the house, defendant fled.

By its verdict, the jury found the defendant guilty of second degree murder. From judgment imposing imprisonment for a term of two to twenty years, defendant appealed.

*Attorney General Edmisten, by Special Deputy Attorney General John R. B. Matthis and Assistant Attorney General James C. Gulick, for the State.*

*Loflin & Loflin, by Thomas F. Loflin III, for defendant-appellant.*

ARNOLD, Judge.

[1] Defendant brings forward eleven assignments of error for our consideration. First, he contends that the trial court erred in permitting the State to ask the firearms identification expert the following two questions:

> Q. If you have a .22 caliber pistol and a .22 caliber rifle, both using the same type, the same type of manufactured ammunition, both being fired from the same distance at the same target, what consequence would be the greater velocity that you testified the rifle would have, what consequence would that have in terms of striking the target?

. . . .

> Q. Would you tell the jury, please, how the characteristics of .25 caliber ammunition compare with that of .22 caliber long rifle ammunition?

One of defendant's arguments about these questions is that they were hypothetical questions requiring the State to incorporate into the questions relevant facts in evidence in the case. We disagree with this contention.

Under well-established law in our jurisdiction, an expert witness may be permitted to render his opinion based on facts not within the expert's personal knowledge. 1 *Stansbury's North Carolina Evidence* § 136 (Brandis Rev. 1973). If the expert is basing his opinion on facts not within his personal knowledge, the facts upon which he grounds his opinion must be set before the jury in a proper manner, leaving to the jury the duty to find the facts. *Todd v. Watts*, 269 N.C. 417, 152 S.E. 2d 448 (1967). If the facts upon which the expert bases his opinion are within his own knowledge, he may be permitted to state positively his opinion on the matter. 1 *Stansbury's, supra* § 136.

In the present case, we find that the two questions were based on the expert's own personal knowledge and that a hypo-

thetical question was not necessary. The State did not ask the witness' opinion as to who fired the shot which was fatal to Courtney Rorie; nor did it ask his opinion as to what type of gun fired the fatal shot. In either of these cases, a hypothetical question incorporating facts the jury might find would have been necessary. As the questions were posed, however, the expert witness had only to compare velocities and characteristics of weapons and ammunition, a comparison based solely on his own expert knowledge.

Defendant argues further that these two questions were improper because there was no evidence to support the State's inference that the pistol used by "James" was of a .22 or .25 caliber type. From the evidence as it is set forth in the record, the identity of "James" as well as of the type of pistol he used were unknown. While we agree with the defendant that the State apparently wanted the jury to find that James' pistol was of a .22 or .25 caliber type and was, because of the distance of "James" from Courtney Rorie, less likely to have caused the fatal wound, we cannot hold this to be error. The defendant had every opportunity on cross-examination to emphasize the fact that the caliber of "James'" pistol was unknown, that there was a possibility that its caliber was much higher, and that a pistol of higher caliber might have caused the fatal wound.

Defendant next assigns as error the trial court's admission into evidence of nine exhibits (Numbers 3, 4, 16, 17 and 18-22), including the rifle obtained from defendant's counsel, the only bullet found in the victim's body, and cartridge cases found in the driveway at 319 Chadwick Road. Defendant's contention that these items were not relevant is absurd and is rejected. The test, which is clearly met in this case, is that real evidence is relevant if it sheds any light on the circumstances of the crime. *See* 1 *Stansbury's, supra*, § 118.

[2] Furthermore, we reject defendant's argument that the State failed to establish chain of custody of the rifle between the time of the alleged murder and 29 September, three days later, when it was turned over to the State by defense counsel. The remote possibility that the rifle was switched while in the possession of defendant's attorney was ruled out by the testimony of the firearms identification expert who positively determined that two of the cartridges found in the driveway of 319 Chadwick Road had been fired from that particular rifle.

Defendant's further contention concerning the introduction of real evidence is that the State failed to establish that the items introduced into evidence were involved in the incident giving rise to the trial.

In *State v. Harbison*, 293 N.C. 474, 238 S.E. 2d 449 (1977), the Supreme Court noted that there are no simple standards for determining whether an object offered in evidence has been adequately identified as being the same object involved in the incident giving rise to the trial and shown to have been unchanged in any material respect. As a result, the trial judge must exercise sound discretion in determining the standard of certainty required to show that the item offered into evidence is the same as that involved in the incident. *Id.* In the case before us, we find that the trial court did exercise sound discretion in allowing the State to introduce the several items of real evidence.

The record reveals that the evidence was held under lock and key by the Property Officer of the Durham Police Department. He checked the items out twice, once to his supervisor, the firearms identification expert, and once to a laboratory technician. Both of these men testified. Michael Jennings, the laboratory technician, identified the fired cartridges (Exhibits 18-22), the small lead particles (Exhibit 16), and the bullet (Exhibit 17) from the victim's body as the ones either found at the scene of the shooting or retrieved from the medical examiner. Curtis, the firearms expert, positively identified the rifle (Exhibit 3), and cartridges and a cartridge case (Exhibit 4). Furthermore, Louis Danford, formerly of the Durham County Sheriff's Department, testified that the rifle (Exhibit 3) introduced into evidence was the one he received from defendant's counsel and that, further, the nine live rounds of ammunition (Exhibit 4) were removed from that rifle. Based on the foregoing, we find no merit to defendant's contention that the State failed to identify these objects as being connected to the incident.

[3] As his third assignment of error, defendant contends that the trial court erred in failing to dismiss the case at the close of the State's evidence and at the close of all of the evidence and in denying defendant's motion to set aside the jury verdict. The basis of all three of defendant's motions was that there was insufficient evidence to support his conviction for any degree of homicide.

Upon a motion to dismiss in a criminal action, all of the evidence favorable to the State must be deemed true; discrepancies and contradictions therein are disregarded, and the State is entitled to every favorable inference of fact reasonably deduced from the evidence. *State v. Witherspoon*, 293 N.C. 321, 237 S.E. 2d 822 (1977). Based on this principle, this Court can find no error in the trial court's denials of defendant's motion. A reading of the facts set forth in this opinion shows that there was substantial evidence from which a jury might conclude that the defendant fired the shot which caused Rorie's death. The fact that there was some evidence that another man was firing a pistol at the deceased does not negate, for purposes of defendant's motions, the evidence implicating defendant.

[4] Defendant's fourth assignment of error pertains to the exclusion of certain evidence he sought to introduce in order to show the character of the deceased as being that of a dangerous and violent person. The excluded evidence, elicited from Rachel Jones, defendant's wife, was to the effect that Courtney Rorie, at some point in the past, had shot up the window of Rachel Jones' house and, when she had attempted to go call the sheriff, the deceased had driven up behind her and had shot the tires of her automobile; that Rorie had once gone into Gracey Rorie's house and destroyed many of its furnishings; that, upon Rorie's return to Durham, he threatened to remove all the furniture from the house; that defendant's wife and others in her family had gone to a lawyer and then to law enforcement officials, including a district court judge, to stop Rorie's threatened efforts; and that a warrant for Rorie's arrest on earlier charges had been drawn.

In a prosecution for homicide or for assault and battery, where there is evidence tending to raise the issue of self-defense, evidence of the character of the deceased as a violent and dangerous fighting man is admissible if (1) such character was known to the accused or (2) the evidence is wholly circumstantial or the nature of the event is in doubt. 1 *Stansbury's, supra*, § 106. In the instant case, we are concerned only with the question of whether the particular acts of Courtney Rorie's violence, related by Rachel Jones, were known to the defendant. While it is hard to find that defendant did not know of some of the incidents about which his wife attempted to testify, we must, after studying the record, so conclude. Rachel Jones did not testify that defendant

knew of Rorie's destruction of furniture or of his shooting out the window of her house and the tires of her car; defendant was apparently not among the family members who sought legal help and was, as far as the record reveals, unaware of those efforts. Most importantly, defendant, who took the stand in his own behalf, failed to testify to the very incidents about which his wife sought to testify. We cannot hold it error that the trial court refused to admit this testimony concerning the victim.

There was testimony elicited from Rachel Jones which would have confirmed defendant's testimony concerning Rorie's violent and dangerous character. This testimony, however, was merely cumulative, and its exclusion was not erroneous.

Defendant's fifth assignment of error is related to additional evidence concerning Rorie's violent and dangerous character. Defendant contends that the trial court erred in refusing to admit documents from the divorce file of Gracey and Courtney Rorie. The record shows that the file contained a Complaint for a Divorce from Bed and Board and Motion for Temporary Restraining Order; Gracey Rorie's Affidavit to bring action as a pauper; Certificate of Counsel in support of the affidavit; an Order allowing Gracey Rorie to proceed *in forma pauperis*; an Order to Show Cause; a Temporary Restraining Order; Courtney Rorie's handwritten answer; a civil summons; an Order granting, among other things, a divorce from bed and board; a Motion for Contempt; and an Order for the arrest of Rorie.

Obviously many of these documents were not relevant to defendant's cause. Once the objection to their admission was sustained, defendant should have reoffered the unobjectionable parts. *See Branch v. Dempsey*, 265 N.C. 733, 145 S.E. 2d 395 (1965). This he failed to do. Furthermore, it does not appear from the record that defendant was aware of the incidents of Rorie's violence which were related in the documents. Hence, the documents were not admissible to show Courtney Rorie's character as a violent and dangerous man. 1 *Stansbury's, supra.*

[5] As his sixth assignment of error, defendant contends that the trial court erred in charging the jury on how to determine the credibility of witnesses interested in the outcome of the trial. The record reveals that the trial court charged the jury as follows:

Now, you may find that a witness or witnesses are interested in the outcome of the trial and in deciding whether or not to believe such a witness then you should take into account the interest that he or she may have, and [if after doing so you believe that testimony in whole or in part, then you should treat what you believe the same as you would treat other believable evidence.]

DEFENDANT'S EXCEPTION NO. 13

We do not believe, as defendant contends, that this instruction invaded the province of the jury to assign different weight and importance to the testimony of the various witnesses. Prior to this instruction the court had charged:

You are also the sole judges of the weight to be given any of the evidence presented, and by this I mean, if you decide certain evidence is believable you must then determine the importance of that evidence in light of all the other believable evidence presented during the trial.

In reviewing this as well as the charge about which defendant complains, we can find no error in this portion of the charge.

[6] Next defendant assigns as error the following instructions concerning second degree murder:

I instruct you, Members of the Jury, that in order for you to find this defendant guilty of second degree murder and in order for the State to prevail in that, the State must prove two things beyond a reasonable doubt, which are

[First, that this defendant, Alvin Eugene Jones, on or about the 26th day of September, 1980, intentionally and without justification or excuse, such as while acting in self-defense, and with malice shot Courtney Rorie with a deadly weapon.]

EXCEPTION NO. 14

. . . .

I have used the word malice ... [in saying that] the acts must be done with malice. I instruct you that malice means not only hatred or ill will or spite, as it is ordinarily

understood, that, of course, is malice. [but the word malice also means that condition of mind which prompts a person to take the life of another intentionally or to intentionally inflict a wound with a deadly weapon upon another which proximately results in his death, without just cause, excuse or justification, such as, through acting in self-defense,]

EXCEPTION NO. 16

Additionally, the trial court, in redefining second degree murder, included the following instruction:

First, that the defendant intentionally and without justification or excuse and with malice shot Courtney Rorie with a deadly weapon. [When I use the term without justification or excuse I'm referring to self-defense or the doctrine of self-defense.]

DEFENDANT'S EXCEPTION NO. 20

Defendant contends that, by these confusing instructions, the court charged that acting in self-defense would be an intentional shooting without justification or excuse. While we concede that, according to the court reporter's punctuation, the instructions were not well stated, we find, in view of the rest of the charge, that defendant suffered no prejudicial error.

The law in North Carolina is well-established that, although it may not be necessary to kill to avoid death or great bodily harm, a person may kill if he believes it to be necessary, and he has reasonable grounds for believing it necessary, to save himself from death or great bodily harm. *State v. Gladden*, 279 N.C. 566, 184 S.E. 2d 249 (1971). The reasonableness of his belief is to be determined by the jury from the facts and circumstances as they appeared to the defendant at the time of the killing. *Id.*

In the instant case, in addition to the charge set forth above, the trial court clearly stated that a killing would be excused entirely on the ground of self-defense if certain circumstances existed. Given these instructions, we conclude that error, if any, in this portion of the charge was not prejudicial to defendant.

[7] Defendant's eighth assignment of error pertains to another exception he took to the jury charge. He contends that the follow-

ing original instruction, repeated when the judge· redefined second degree murder, allowed the jury to infer defendant's intent from circumstances without requiring the jury to find the circumstances specifically:

> Now, I have said that the act must have been intentional. Intent is the exercise of an intelligent will. Intent is a condition or emotion of the mind which is seldom, if ever, capable of direct proof, but the intent of a person is usually deduced from the acts, the declarations, and·circumstances known to the person charged with having that intent. [One arrives at the intent of another person by such just and reasonable deductions from the circumstances proven as a reasonably prudent person would ordinarily draw therefrom.]

EXCEPTION NO. 15.

We can find no merit in defendant's contention. It is certainly within the province of the jury to determine what the circumstances of the killing were; as the charge reflects, once the jury has done this, it must make reasonable deductions of defendant's intent from those circumstances. The jurors are not required ·to· agree on all the circumstances; different persons may reasonably deduce intent from slightly variant circumstances. In overruling this assignment of error, we note that the *North Carolina Pattern Jury Instructions* contain this instruction on intent almost verbatim. *North Carolina Pattern Jury Instructions for Criminal Cases*, § 206.30.

[8]   As his next assignment of error, defendant contends that the trial court erred in instructing the jury on the inference it might draw if it found beyond a reasonable doubt that defendant intentionally inflicted the fatal wound upon Courtney Rorie. The trial court charged:

> Now, if the State proves beyond a reasonable doubt that the defendant intentionally killed Courtney Rorie with a deadly weapon or that he intentionally· inflicted a wound upon him with a deadly weapon that proximately caused his death, then you may infer first, that the killing was unlawful, and second, that the killing was done with malice, but you are not compelled to draw such an inference. You may consider this along with all the other facts and circumstances in

determining whether the killing was unlawful and whether it was done with malice. If the killing was unlawful and was done with malice, then the defendant would be guilty of second degree murder, nothing else appearing.

Defendant's argument is that, because self-defense was an issue in the case, the trial court should have instructed about the permissibility of the inferences of unlawfulness and malice with reference to the evidence about self-defense. Defendant asserts that neither inference could be drawn until the jury determined beyond a reasonable doubt that the defendant did not act in self-defense.

In *Mullaney v. Wilbur*, 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed. 2d 508 (1975), the Supreme Court held that the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution requires the prosecution to prove beyond a reasonable doubt the absence of heat of passion on sudden provocation when the issue is properly presented in a homicide case. Thereafter, in *State v. Hankerson*, 288 N.C. 632, 220 S.E. 2d 575 (1975), rev'd. on other grounds, 432 U.S. 233, 97 S.Ct. 2339, 53 L.Ed. 2d 306 (1977), our Supreme Court held that the requirement that a criminal defendant prove that he acted in self-defense violated the Due Process Clause. As the Court interpreted the *Mullaney* ruling, our courts are not precluded from utilizing traditional presumptions of malice and unlawfulness.

It precludes only utilizing them in such a way as to relieve the state of the burden of proof on these elements when the issue of their existence is raised by the evidence. The presumptions themselves, standing alone, are valid and, we believe, constitutional [Citations omitted]. Neither, by reason of *Mullaney*, is it unconstitutional to make the presumptions mandatory in the absence of contrary evidence nor to permit the logical inferences arising from facts proved (killing by intentional use of a deadly weapon).

*Id.* at 649, 220 S.E. 2d at 588.

Citing these cases, defendant argues that the trial court's instructions set forth mandatory presumptions of unlawfulness and malice and that where, as here, there was evidence of self-defense, such presumptions were not constitutionally acceptable. We disagree with the defendant's argument.

First, the presumptions of unlawfulness and malice were not mandatory. The jurors were told that they were not compelled to draw such inferences and that they could consider the inference along with other facts and circumstances in determining whether the killing was done unlawfully and with malice. Secondly, the trial court had already instructed the jury that, in order to find defendant guilty of second degree murder, it had to find that he had intentionally, *without justification or excuse such as self-defense*, shot Rorie with a deadly weapon. Finally, the trial court, in instructing on the issue of self-defense, clearly placed on the State the burden of proving beyond a reasonable doubt that the defendant did not act in self-defense. When we read the instructions as a whole, we can find no violation of the *Mullaney* and *Hankerson* principles.

Defendant also asserts that, when self-defense is at issue in a case, the presumption of malice and unlawfulness from a shooting found to be intentional is inconsistent with due process of law. The reason for this, according to defendant, is that the presumption violates the "more likely than not" standard:

> [A] criminal statutory presumption must be regarded as "irrational" or "arbitrary," and hence unconstitutional, unless it can at least be said with substantial assurance that the presumed fact is more likely than not to flow from the proved fact on which it is made to depend.

*Leary v. United States*, 395 U.S. 6, 36, 89 S.Ct. 1532, 1548, 23 L.Ed. 2d 57, 82 (1969). We reject defendant's argument that the presumptions of malice and unlawfulness are not "more likely than not" to flow from proof of an intentional shooting. *Leary*, which held unconstitutional a statutory presumption that one in possession of marijuana had knowledge that the substance was imported into this country, does not apply. Defendant's ninth assignment of error is overruled.

[9] Defendant's tenth assignment of error is based on the exception he took to the following instructions on the third aspect of the doctrine of self-defense:

> And the third thing is that the defendant was not the aggressor in the incident. If he voluntarily and without any provocation entered into the fight, [he making the first move.]

State v. Jones

EXCEPTION NO. 18

then he would the aggressor unless he thereafter attempted to abandon the fight and gave notice to Courtney Rorie that he was doing so.

Contrary to defendant's contentions, we do not find that this instruction confused the jury as to this aspect of the law of self-defense. The right of self-defense is available only to one who is without fault. If a person voluntarily, *i.e.* aggressively and willingly, without legal provocation or excuse, enters into a fight, he cannot invoke the doctrine of self-defense unless he abandons the fight, withdraws from it, and gives notice to his adversary that he has done so. *State v. Davis*, 225 N.C. 117, 33 S.E. 2d 623 (1945). We find that the instructions set forth adequately reflect the law on this matter.

[10] Defendant's final contention is that the trial court erred when it instructed the jurors that it was their duty to remember and consider the *convictions* urged by counsel in their arguments. The trial court obviously committed a minor *lapsus linguae* when it referred to "convictions" instead of "contentions." In view of the rest of the charge concerning the jury's duty to remember and consider all the evidence and in view of the fact that the *lapsus linguae* affected equally the prosecution and defense, we find no error.

Having reviewed the record of defendant's trial and the contentions he has brought forward, this Court finds that defendant received a fair trial, free from prejudicial error.

No error.

Judges CLARK and WHICHARD concur.