NO. COA13-1005

NORTH CAROLINA COURT OF APPEALS

Filed: 1 April 2014

STATE OF NORTH CAROLINA

    v.

DEVON ARMOND GAYLES,
    Defendant.

Buncombe County
Nos. 11CRS064748
       12CRS000363-64

Appeal by defendant from Judgments entered on or about 13 March 2013 by Judge Mark E. Powell in Superior Court, Buncombe County. Heard in the Court of Appeals 23 January 2014.

> *Attorney General Roy A. Cooper III, by Special Deputy Attorney General Kay Linn Miller Hobart, for the State.*

> *Appellate Defender Staples Hughes by Assistant Appellate Defender Charlesena Elliott Walker, for defendant-appellant.*

STROUD, Judge.

Devon Gayles ("defendant") appeals from judgments entered on or about 13 March 2013 after a Buncombe County jury found him guilty of one count of second degree murder and one count of possession of a firearm by a felon. After the jury's verdict defendant also pled guilty to having attained habitual felon status. We conclude that defendant has failed to show prejudicial error at his trial.

## I.  Background

On or about 9 July 2012, defendant was indicted in Buncombe County for the murder of Anthony Byron Carter, possession of a firearm by a felon, and having obtained habitual felon status. Defendant pled not guilty and proceeded to jury trial.

At trial, the State's evidence tended to show the following facts. In the early morning of 24 December 2011, Anthony Carter and some friends went to an Asheville nightclub called "Hole-N-Da-Wall."  Defendant was also at the club that night. Slightly before 2 a.m., Mr. Carter and defendant got into a fight. The two men were "fussing and cussing at each other" in an apparent dispute over whether Mr. Carter had spilled beer on defendant. Mr. Carter shoved defendant and defendant shoved back.  Darnelle Logan, a "bouncer" for the nightclub, stepped in to break up the fight.  He told defendant to leave the club, but instructed Mr. Carter not to follow until after defendant had left.  Despite Mr. Logan's instructions, Mr. Carter followed defendant toward the entrance of the nightclub and began hitting defendant again in the head.

At this point the witnesses' stories diverged slightly. One witness testified that she saw defendant pull a gun out of his vest and shoot Mr. Carter.  Stacey Taylor, one of Mr. Carter's

friends, testified that defendant dropped the gun when Mr. Carter hit him. Mr. Taylor testified that he tried to step on the gun, but that defendant gained control of it, stood up, and fired one shot at Mr. Carter. A third witness testified that she saw defendant with the gun in his hand and heard the shot, but did not see where the weapon came from. After being shot, Mr. Carter stumbled through the front door of the club and collapsed on the concrete stairs in view of several Alcohol Law Enforcement Special Agents. Mr. Carter died of a single gunshot wound to the chest.

After shooting Mr. Carter, defendant ran out of the club and fled to Cincinnati, Ohio, where he was apprehended nearly two months later. A detective from the Asheville Police Department interviewed defendant while he was jailed in Cincinnati. The detective informed him that he was under arrest for murder. Defendant gave no statement, but asked, "Who did I kill?"

Defendant presented evidence in his defense and testified on his own behalf. Defendant's testimony largely matched that of the other witnesses. He testified that he was in the club with a business associate named "Frog." Defendant was trying to light up his "joint" when someone bumped into him, then punched him

three or four times in the mouth before a bouncer intervened. Defendant saw that it was Mr. Carter. Defendant testified that he knew Mr. Carter as a gang member who "ran the west side," and who kidnapped and robbed people. Defendant then tried to leave the club, but someone "out of nowhere" punched him several more times, causing him to fall forward. Defendant testified that when he opened his eyes he saw a gun on the floor and a foot on the gun, so he grabbed for it. Defendant gained control of the weapon and stood back up. Mr. Carter punched him one more time in the face, so defendant raised the gun and fired one shot at him. Defendant then left the club and threw the gun into a nearby trash can. Defendant testified that after the shooting he received threatening messages, so he decided to flee Asheville and go to Cincinnati.

The jury found defendant guilty of murder in the second degree and possession of a firearm by a felon. The trial court sentenced defendant to 219-275 months imprisonment and a consecutive term of 88-118 months imprisonment. Defendant gave notice of appeal in open court.

## II. Cross-examination on Prior Convictions

Defendant first argues that the trial court erred in permitting the prosecutor to cross-examine him on the details of his prior convictions. We disagree.

A.   Standard of Review

The State contends that defendant's arguments concerning the prosecutor's cross-examination of defendant on the details of his prior convictions were not properly preserved. Although defendant did not object when the prosecutor asked twice if he had been convicted of carrying a concealed .22 caliber revolver, neither of those questions elicited evidence. The question to which defendant did object was the one which produced the evidence he challenges on appeal. The prosecutor's questions were not evidence and "[o]rdinarily, the asking of the question alone will not result in prejudice to the defendant." *State v. Campbell*, 296 N.C. 394, 399, 250 S.E.2d 228, 231 (1979). Because defendant did object to the question which produced the challenged evidence, we hold that defendant's objection to the evidence that he had been convicted of carrying a concealed .22 caliber revolver was properly preserved.

> The standard of review for admission of evidence over objection is whether it was admissible as a matter of law, and if so, whether the trial court abused its discretion in admitting the evidence. Abuse of discretion results where the court's

> ruling is manifestly unsupported by reason or is so arbitrary that it could not have been the result of a reasoned decision.

*State v. James*, ___ N.C. App. ___, ___, 735 S.E.2d 627, 629 (2012) (citations and quotation marks omitted).

B.   Analysis

> It is the rule in North Carolina that for purposes of impeachment, a witness, including the accused, may be cross-examined with respect to prior convictions. . . . [W]here, for purposes of impeachment, the witness has admitted a prior conviction, the time and place of the conviction and the punishment imposed may be inquired into upon cross-examination. . . . A showing that the witness has been convicted of an offense is a prerequisite to the *right* to cross-examine him relative to the punishment imposed.

*State v. Finch*, 293 N.C. 132, 141, 235 S.E.2d 819, 824 (1977).

First, defendant contends that the State failed to establish his prior conviction before asking him about that conviction. That is not what the law requires. As stated in *Finch*, the State may only inquire into the time, place, and level of punishment imposed relative to an established conviction. *Id.* But the State is not required to somehow establish the conviction before asking the defendant about the existence of such a conviction. As with any other witness, the State is free to ask the defendant whether he has been convicted of a crime other than a Class 3 misdemeanor consistent with N.C.

Gen. Stat. § 8C-1, Rule 609, assuming that there is a good faith basis for such questioning. *See State v. Alkano*, 119 N.C. App. 256, 263, 458 S.E.2d 258, 263 ("Questions asked on cross-examination must be asked in good faith."), *app. dismissed*, 341 N.C. 653, 465 S.E.2d 533 (1995). The State did not inquire further into the details of defendant's prior convictions until after he admitted them.

Generally, "inquiry into prior convictions which exceeds the limitations established in *Finch* is reversible error." *State v. Rathbone*, 78 N.C. App. 58, 64, 336 S.E.2d 702, 705 (1985), *disc. rev. denied*, 316 N.C. 200, 341 S.E.2d 582 (1986). Nevertheless, "when the defendant 'opens the door' by misstating his criminal record or the facts of the crimes or actions, or when he has used his criminal record to create an inference favorable to himself, the prosecutor is free to cross-examine him about details of those prior crimes or actions." *State v. Bishop*, 346 N.C. 365, 389, 488 S.E.2d 769, 782 (1997) (citation and quotation marks omitted).

Here, defendant testified on his own behalf and attempted to minimize his criminal record both on direct and cross-examination. On direct examination, defendant's trial counsel asked him what he had been convicted of. Defendant responded,

"Just maybe eleven years ago what the judge talked about earlier." The prior stipulation that the trial court read to the jury simply stated that "The State and the defendant stipulate or agree that the defendant was a convicted felon on or about December 24, 2011 . . . ."

The State, on cross-examination, then inquired about his prior convictions:

> [PROSECUTOR]: Isn't it true you were convicted on April the 29th of 2002 of felonious carrying a concealed weapon, that being a .22-caliber revolver out of Berrien County, Michigan?
>
> [DEFENDANT]: When?
>
> [PROSECUTOR]: April the 29th, 2002 you were convicted of felonious carrying a concealed weapon, a .22-caliber, out of Berrien County, Michigan?
>
> [DEFENDANT]: No.

The State then showed defendant a court record from Michigan which listed a conviction for carrying a concealed weapon and asked defendant, over defendant's objection, again what type of weapon was listed on the judgment. Defendant responded "A .22 caliber revolver." Defendant admitted that he had been convicted of that charge. The State then asked about a conviction for possession of a firearm by a felon, also in Michigan. Defendant attempted to explain what happened that lead

to each conviction, stating that someone else was driving his car with a gun in it, which led to the first conviction, and that the second firearm was found in his home.

In *State v. Braxton*, 352 N.C. 158, 531 S.E.2d 428 (2000), *cert. denied*, 531 U.S. 1130, 148 L.Ed. 2d 797 (2001), our Supreme Court addressed similar circumstances. In that case, the defendant, on direct examination, described a series of prior convictions, including an assault he described as "getting into some trouble." *Braxton*, 352 N.C. at 193, 531 S.E.2d at 448 (brackets omitted). The Court described the State's cross-examination as follows:

> On cross-examination the prosecutor questioned defendant about the misdemeanors and in an effort to jog defendant's memory, mentioned factual details. The prosecutor also asked if the assault on the officer at Polk Youth Center was what defendant meant by "getting into trouble" and whether this was the incident that caused defendant to be transferred from Polk Youth Center to Blanch, a more restrictive facility which defendant had described on direct examination. In response to a question by the prosecutor concerning when he started the cycle of being continuously in and out of prison, defendant volunteered information about stealing a car; and the prosecutor then asked him who the victim was and if he was charged with stealing a car. Defendant responded that he stole a cab and that he was charged with larceny of a motor vehicle and robbery. The prosecutor asked what kind of robbery it was in order to clarify that

> it was armed robbery and then asked what type of weapon defendant used. The prosecutor also cross-examined defendant about the sequence and timing of the other murders that defendant had committed.

*Id.* at 193, 531 S.E.2d at 449. The Supreme Court held that "the prosecutor did not exceed the proper scope of examination" because the defendant tried to minimize his criminal history on direct examination, and the prosecutor only asked about "the factual elements of the crimes," not "tangential circumstances of the crimes." *Id.* at 193-94, 531 S.E.2d at 449 (brackets omitted).

Similarly, here, defendant tried to minimize his criminal record on direct examination and then denied that he had been convicted of carrying a concealed weapon when asked on cross-examination. Most of the details concerning tangential circumstances of the crimes were offered by defendant without prompting by the prosecutor. As in *Braxton*, the prosecutor's questions on the type of gun used were part of the prosecutor's effort to jog defendant's memory about a prior conviction he denied and to counter defendant's attempts to minimize his criminal record. *See id.* at 194, 531 S.E.2d at 449. Therefore, we conclude that defendant opened the door to the prosecutor's

questions concerning the type of weapon involved with his prior crimes.

### III. Impeachment by Prior Conviction

Defendant next asserts that the trial court erred by allowing the State to impeach him using prior convictions when he had stipulated that he was a convicted felon for purposes of the possession of a firearm by a felon charge. We disagree.

Defendant did not object on this basis at trial, but he asks us to review this asserted error for plain error. "[B]efore a ruling can be plain error, it must be error." *State v. Lopez*, ___ N.C. App. ___, ___, 723 S.E.2d 164, 168 (2012) (citation and quotation marks omitted). Even assuming we were to adopt the reasoning of *Old Chief v. United States*, 519 U.S. 172, 136 L.Ed. 2d 574 (1997), which defendant principally relies on, it would not have been error for the trial court to permit the State to impeach defendant with his prior convictions.[1] In *Old Chief*, the U.S. Supreme Court specifically noted that "[w]hile it is true that prior-offense evidence may in a proper case be admissible for impeachment, even if for no other purpose, Fed. Rule Evid. 609, [Old Chief] did not testify at trial." *Old Chief*, 519 U.S.

---

[1] *Old Chief* concerned the interpretation of the Federal Rules of Evidence; it does not control our interpretation of the North Carolina Rules of Evidence. *State v. Faison*, 128 N.C. App. 745, 747, 497 S.E.2d 111, 112 (1998).

at 176 n.2, 136 L.Ed. 2d at 585 n.2. Even in the North Carolina cases applying *Old Chief*, we have never held that such a rule applies where the defendant elects to testify. *See generally, State v. Fortney*, 201 N.C. App. 662, 687 S.E.2d 518 (2010), *State v. Little*, 191 N.C. App. 655, 664 S.E.2d 432, *disc. rev. denied*, 362 N.C. 685, 671 S.E.2d 326 (2008), *and State v. Faison*, 128 N.C. App. 745, 497 S.E.2d 111 (1998)*; but see State v. Tice*, 191 N.C. App. 506, 511, 664 S.E.2d 368, 372 (2008) (in a case where the defendant did testify, deciding that defendant failed to show ineffective assistance by failing to raise such an argument under *Old Chief*).

Here, where defendant did testify, he was subject to impeachment on the basis of his prior convictions, even though he had already stipulated to being a convicted felon for purposes of the firearm possession charge. *See United States v. Kemp*, 546 F.3d 759, 763 (6th Cir. 2008) (holding that the protection afforded by *Old Chief* "can recede when a criminal defendant chooses to testify at trial"). The trial court did not err in permitting the State to impeach defendant on that basis.

IV.  Gang Evidence

Defendant next argues that the trial court erred in excluding various evidence about gang culture and evidence from

other witnesses about the decedent's gang membership that defendant asserts was relevant to his claim of self-defense. We disagree.

Defendant proffered the testimony of Gregory Hestor, a former officer in the Charlotte-Mecklenburg Police Department's Gangs and Firearms Unit, Asheville Police Department detective Mandy Buchanan, and Sergeant Louis Tomasetti, an Asheville Police Department gang investigator. Mr. Hestor would have testified about gang culture, the meanings of gang tattoos, and their mindset. Detective Buchanan would have testified that one of the tattoos on Mr. Carter's chest was a gang symbol. Sergeant Tomasetti would have testified about Mr. Carter's tattoos, what they symbolize, and how one determines whether someone is a gang member. The trial court excluded all three witnesses' testimony as irrelevant. Additionally, the trial court prevented defendant from questioning Mr. Taylor about Mr. Carter's gang membership. The trial court did permit defendant to testify that he had been informed that Mr. Carter was a gang member who had robbed and kidnapped people.

Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than

it would be without the evidence." N.C. Gen. Stat. § 8C-1, Rule 401 (2011). Although "a trial court's rulings on relevancy technically are not discretionary and therefore are not reviewed under the abuse of discretion standard applicable to Rule 403, such rulings are given great deference on appeal." *State v. Wallace*, 104 N.C. App. 498, 502, 410 S.E.2d 226, 228 (1991), *disc. rev. denied and app. dismissed*, 331 N.C. 290, 416 S.E.2d 398, *cert. denied*, 506 U.S. 915, 121 L.Ed. 2d 241 (1992).

> The law in North Carolina is well-established that, although it may not be necessary to kill to avoid death or great bodily harm, a person may kill if he believes it to be necessary, and he has reasonable grounds for believing it necessary, to save himself from death or great bodily harm. The reasonableness of his belief is to be determined by the jury from the facts and circumstances as they appeared to the defendant at the time of the killing.

*State v. Jones*, 56 N.C. App. 259, 269, 289 S.E.2d 383, 390 (citations omitted), *disc. rev. denied and app. dismissed*, 305 N.C. 762, 292 S.E.2d 578 (1982).

Defendant asserts that the proffered testimony was relevant to his reasonable apprehension of great bodily harm. However, none of the proffered evidence related to what the defendant knew about Mr. Carter's gang membership or character for violence. The relevant question is what defendant knew or

thought about defendant and his history of violence, i.e. "the facts and circumstances as they appeared to defendant at the time of the killing." *Id.*; *see State v. Shoemaker*, 80 N.C. App. 95, 101, 341 S.E.2d 603, 607 ("In self-defense cases, the character of the victim for violence is relevant only as it bears upon the reasonableness of defendant's apprehension and use of force, which are essential elements of the defense of self-defense. Thus, the conduct becomes relevant only if defendant knew about it at the time of the shooting." (citations omitted)), *disc. rev. denied and app. dismissed*, 317 N.C. 340, 346 S.E.2d 145 (1986); *State v. Brown*, 120 N.C. App. 276, 277-78, 462 S.E.2d 655, 656 (1995) ("In self-defense cases, the victim's violent character is relevant only as it relates to the reasonableness of defendant's apprehension and use of force . . . ."), *disc. rev. denied*, 342 N.C. 896, 467 S.E.2d 906 (1996). What three police officers and other witnesses knew about gangs and gang culture, and the significance of Mr. Carter's tattoos—of which defendant has never claimed to be aware at the time of the killing—has no relevance to defendant's reasonable apprehension of great bodily harm. Therefore, we hold that the trial court did not err in excluding the proffered testimony as irrelevant.

V.    Impeachment by Prior Inconsistent Statement

Finally, defendant asserts that the trial court erred in allowing the State to cross-examine him on the basis of statements he denied making that were contained in a police report. We hold that although the prosecutor's questions were inappropriate, especially in light of the trial court's instructions not to ask such questions, defendant has failed to show prejudice.

> The credibility of a witness may be impeached on cross-examination by questioning the witness regarding evidence that appears to be inconsistent with the testimony of the witness. However, contradiction of collateral facts by other evidence is not permitted, as its only effect would be to show that the witness is capable of error on immaterial points, and to allow it would confuse the issues and unduly prolong the trial.

*State v. Kimble*, 140 N.C. App. 153, 167, 535 S.E.2d 882, 891 (2000) (citations and quotation marks omitted), *cert. denied*, 360 N.C. 178, 626 S.E.2d 833 (2005).

While the denial of a conviction may be contradicted by extrinsic evidence from a public record, the facts surrounding prior convictions will normally be collateral, and extrinsic evidence is inadmissible if used solely to contradict the witness' denial of such collateral matters. *See State v. Dalton*,

96 N.C. App. 65, 70, 384 S.E.2d 573, 576 (1989) (holding that a defendant's denial of a conviction may be contradicted by introducing public records which prove such a conviction); *State v. Monk*, 286 N.C. 509, 517, 212 S.E.2d 125, 132 (1975) (noting that the prosecutor may cross-examine a defendant "concerning *collateral matters* relating to his criminal and degrading conduct." (emphasis added)); *Kimble*, 140 N.C. App. at 167, 535 S.E.2d at 891 (stating that "contradiction of collateral facts by other evidence is not permitted.").

Defendant, on cross-examination, claimed that he was charged with carrying a concealed weapon because he had sold his car to someone else, who had the gun in the trunk, but was charged nonetheless because the car was still registered in his name. The State attempted to impeach defendant by introducing a police report which stated that defendant had admitted placing the gun in the trunk. The trial court excluded the report, but permitted the State to ask defendant whether he had made a prior inconsistent statement to Michigan police, given that defendant had attempted to explain away his prior convictions. The prosecutor then persisted in asking questions while quoting the exhibit that the trial court specifically ruled inadmissible:

> [PROSECUTOR]: Mr. Gayles, I'm going to show
> you what's been marked for identification

purposes as State's Exhibit 42. It reads "Berrien Township Police Department." Isn't that correct, sir?

[DEFENSE COUNSEL]: Objection.

COURT: Sustained.

[PROSECUTOR]: And on this document it has your name listed, "Devon Armond Gayles;" correct?

[DEFENDANT:] Yeah.

[PROSECUTOR]: Date of birth, 11-7-1975?

[DEFENSE COUNSEL]: Objection.

COURT: Sustained.

[PROSECUTOR]: Social Security number 384 --

[DEFENSE COUNSEL]: Objection.

COURT: Sustained.

[PROSECUTOR]: So your name's on here; true?

[DEFENDANT]: Yeah, I see it.

[PROSECUTOR]: And on the second page of 42 it talks about a .22-caliber revolver?

[DEFENSE COUNSEL]: Objection.

COURT: Sustained.

[PROSECUTOR]: And on this document, the fourth page says "interview with Devon Gayles."

[DEFENSE COUNSEL]: Objection.

COURT: Sustained.

[PROSECUTOR]: Isn't it true the incident you're saying that that gun belonged to somebody else; that's your testimony?

[DEFENDANT]: Correct.

. . . .

[PROSECUTOR]: So you never told him that [the gun was yours]?

[DEFENDANT]: No.

 . . . .

[PROSECUTOR]: Did you deny making that statement?

[DEFENDANT]: I didn't make it.

[PROSECUTOR]: So the highlighted portion I'm reading is incorrect?

[DEFENSE COUNSEL]: Objection.

COURT: Sustained.

[PROSECUTOR]: And then after "for protection" --

[DEFENSE COUNSEL]: Move to strike, your Honor.

COURT: Allowed.

[PROSECUTOR]: And after the quotes, because it's got quotes "for protection because a week ago somebody had tried to rob him."

[DEFENSE COUNSEL]: Objection.

COURT: Overruled.

[PROSECUTOR]: Do you admit or deny saying that?

[DEFENDANT]: I didn't.

[PROSECUTOR]: You did not say that?

[DEFENDANT]: No.

   . . . .

[DEFENSE COUNSEL]: I would ask for a limiting instruction that [the prosecutor's] questions are not evidence. They're not to be considered by the jury as they are not evidence in themselves.

COURT: I would think the jury understands that the questions themselves aren't evidence. I want to caution you, also, and I'll talk about convictions at the end of the trial. This document that was shown to [defense counsel] is not in evidence. There's no evidence as to where it came from. Keep that in mind; okay? Mr. [Prosecutor], please go on.

After the trial court issued its limiting instruction, the prosecutor continued asking defendant about his Michigan convictions and the details thereof. Defendant continued to explain what led to the convictions and minimize his culpability.

The prosecutor here showed a marked and egregious disregard for the trial court's ruling that the Michigan police report was

inadmissible by continuing to ask questions about the contents of that report. If the prosecutor wanted to make an offer of proof as to the defendant's responses to his questions by asking his questions on the record, he should have done so out of the presence of the jury. Nevertheless, we hold that the prosecutor's misconduct was not prejudicial. The trial court instructed the jury that the prosecutor's questions were not evidence and warned the jury not to consider the document that the prosecutor was reading from as it was not in evidence. "Generally, when a trial court properly instructs jurors to disregard incompetent or objectionable evidence, any error in the admission of the evidence is cured." *State v. Diehl*, 147 N.C. App. 646, 650, 557 S.E.2d 152, 155 (2001), *cert. denied*, 356 N.C. 170, 568 S.E.2d 624 (2002). Further, when a trial court sustains a party's objection to an inappropriate question "no prejudice [ordinarily] exists, for when the trial court sustains an objection to a question the jury is put on notice that it is not to consider that question." *State v. Banks*, 210 N.C. App. 30, 43-44, 706 S.E.2d 807, 817 (2011) (citation and quotation marks omitted). Although the instruction perhaps could have been clearer, we hold that the instruction given by the trial court not to consider the prosecutor's questions cured any

prejudice to defendant. "If defendant desired a different, more limiting instruction, he should have requested it at that time." *State v. Hopper*, 292 N.C. 580, 589, 234 S.E.2d 580, 585 (1977). We do wish to emphasize, however, that such blatant disregard of a trial court's ruling as that shown here by the prosecutor is highly inappropriate.

## VI. Conclusion

For the foregoing reasons, we conclude that there was no prejudicial error at defendant's trial.

NO PREJUDICIAL ERROR.

Judges HUNTER, JR., Robert N. and DILLON concur.